THOMAS, Judge.
 

 In March 2000, James L. Rhodes, Jr., leased a 1.5-acre tract of real property (“the leased property”) and a building to the Abernant Fire Department (“the AFD”). Rhodes owns the adjoining property, and he lives on and operates a business on that property. The AFD operates in the building it leased from Rhodes; the building serves as office space and houses fire engines and other AFD vehicles. The building has one or more drains in its floor; the liquid that collects on the floor drains out one of three PVC pipes that are exposed on the outside of the building. Over a span of years, the AFD or its members have parked nonoperable AFD vehicles on the lot surrounding the building. In addition, an older model automobile in disrepair that was used for training purposes was also parked on the leased property. Over the years, the leased property became littered with refuse, including an old engine block and rubber hoses.
 

 In January and March 2006, Rhodes wrote to Gaile Foster, the president of the AFD. In his letters he complained of the refuse that littered the leased property and requested that the area be cleaned. The letters specifically referenced the nonworking and unused fire trucks on the leased property, old tires and signs that had been left on the leased property, and garbage that littered the leased property.
 

 On March 1, 2007, Rhodes wrote to the AFD to complain that it had violated the lease provision regarding insurance. In his letter, Rhodes warned that a failure to bring the insurance policy in effect in compliance with the requirements of the lease would be considered an event of default under the lease. The AFD contacted its insurance agent, who made the necessary changes in the insurance policy.
 

 When the AFD installed a septic tank in or about February 2007, the field lines for the septic system were installed on Rhodes’s adjoining property, which lies outside the leased property. Rhodes contacted the AFD about this problem, and the AFD agreed that the lines had been improperly located. Rhodes had the field lines dug up and removed and requested that the AFD pay the $600 cost for that task. Although the AFD agreed to do so, it attempted to pay the backhoe operator who had performed the work. Because Rhodes had paid the backhoe operator, he requested that the AFD make a check out to him. The AFD requested proof that Rhodes, had paid the backhoe operator, which Rhodes did not supply.
 

 On April 1, 2007, Rhodes sent a notice to the AFD regarding his complaint that the AFD “has had considerable changes made both to the exterior and interior including damage.” According to Rhodes, the “changes” and damage were violations of section 7 of the lease, which required the AFD, as lessee, “to maintain, at its own cost and expense, the Improvements in the same condition as the Improvements existed on the completion date [of the building], normal wear and tear excepted.” The notice specifically listed as “changes” and damage: the construction of an awning-above a door to the building, the construction of offices inside the building, and damage to the northernmost bay doorframe. Rhodes warned in the notice that the AFD had 20 days to come into compliance with the lease agreement or he would consider the failure to comply an event of default.
 

 
 *741
 
 On April 13, 2007, Rhodes sent another notice to the AFD. The April 13, 2007, notice referred to the dumping of refuse on the leased property. Rhodes referred the AFD to two provisions in the lease, section 9, titled “Requirements of Public Authorities,” and section 32, titled “Environmental Matters.” In pertinent part, those sections read as follows:
 

 “(9)
 
 Requirements of Public Authorities.
 
 During the term of this Lease, [the AFD] shall, at its own cost and expense, promptly observe and comply with all present and future laws, ordinances, requirements, orders, directives, rules and regulations of the federal, state, county and municipal governments and all other governmental authorities affecting the [leased property] .... ”
 

 “(32)
 
 Environmental Matters.
 
 [The AFD] covenants and agrees that [it] and all other persons who manage, use, operate or occupy the leased premises and all improvements situated thereon shall comply with all federal, state and local laws, regulations and orders regulating health, safety and environmental matters, including without limitation air pollution, soil and water pollution and the use, generation, storage, handling or disposal of Hazardous Materials (defined below in this section).
 

 “[The AFD] shall not generate, handle, use, store, treat, discharge, release or dispose of any Hazardous Material at the leased premises unless [the AFD] shall be in full compliance with all environmental laws.
 

 [[Image here]]
 

 “For purposes of this Section, the term ‘Hazardous Materials’ shall mean any hazardous, toxic or dangerous waste, substance or material defined as such in (or for purposes of) the Comprehensive Environmental Response, Compensation and Liability Act of the United States Congress, or in any other law, regulation or order, now or hereafter in effect, of any governmental authority regulating, or imposing liability or standards of conduct relating to, any hazardous, toxic or dangerous waste, substance or material.”
 

 The April 13, 2007, notice also included quotations from two statutes, Ala.Code 1975, § 13A-7-29(a)(l), which describes one of the acts that constitutes “criminal littering,” and Ala.Code 1975, § 22-27-4(b), which defines “unauthorized dumps.” According to Rhodes, the AFD’s continuing practice of leaving refuse on the leased property amounted to violations of the quoted statutes and violated the specified lease provisions.
 

 On or about April 24, 2007, Rhodes sent a “Notice of Termination of Lease” to the AFD. In the notice, Rhodes notified the AFD that he had elected to terminate the lease because, he asserted, the AFD had failed to comply with section 7 of the lease agreement regarding maintenance of the improvements to the leased property. According to the notice, the AFD had 10 days to quit the premises. The date for the removal of the AFD’s personal property from the leased property was specified as May 5, 2007. Subsequent notices from Rhodes to the AFD were dated May 1 and May 2, 2007; both notices indicated that the original quit date of May 5, 2007, would be enforced.
 

 On May 3, 2007, the AFD filed in the circuit court a complaint seeking an emergency temporary restraining order (“TRO”) to prevent what it termed as an unlawful eviction by Rhodes. Apparently, the circuit court took no action and did not grant a TRO. On July 31, 2007, the AFD filed a “renewed” complaint for a TRO because Rhodes had locked a gate on the
 
 *742
 
 road that provided access to the leased property. The circuit court held a hearing on August 3, 2007, after which it treated the AFD’s complaint as an application for a preliminary injunction; the court entered a preliminary injunction on August 8. The injunction restrained Rhodes from blocking access to the leased premises and ordered the AFD to maintain the improvements on the leased property, to refrain from committing waste on the leased property, to prevent spillage of any hazardous waste on the leased property, and to comply with the insurance-related provisions of the lease.
 

 Rhodes answered the complaint on September 26, 2007. He also filed a counterclaim in which he alleged that the AFD had breached the lease, that he had properly given notice of termination of the lease, and that the AFD had refused to vacate the leased property. Rhodes sought a judgment declaring that the lease had been breached by the AFD, terminated by Rhodes, and was no longer in effect; evicting the AFD from the leased property; and awarding attorney fees he had incurred as a result of the AFD’s failure to abide by the terms, conditions, and covenants of the lease. The AFD moved to dismiss the counterclaim insofar as it requested an eviction of the AFD from the leased property because, it asserted, jurisdiction over that claim lies in the district court. The AFD answered Rhodes’s remaining counterclaims.
 

 The circuit court held a trial on November 20, 2007. At the commencement of the proceedings, the parties agreed that Rhodes’s wife, Pamela Rhodes, was a necessary party, and she was added as a defendant/counterclaimant by agreement of the parties. The parties also agreed that the circuit court could not evict the AFD but could only consider whether a breach of the lease agreement had occurred and whether the lease was properly terminated; we deem the admission by the Rhodeses that they would be required to pursue an unlawful-detainer action in district court as a withdrawal of their claim seeking an eviction of the AFD from the leased property.
 

 During the trial, the testimony reflected that the AFD had made attempts to cure the problems that Rhodes had complained of in his notices and letters. The AFD had removed several of the nonworking trucks from the leased property and had picked up some of the litter and refuse on the leased property. Although Rhodes complained that the AFD had not cleaned up everything, including the old engine block, James Lewis, the chief of the AFD, testified that, after the hearing on the TRO, he and the other volunteer fireman had cleaned up the leased property. Lewis said that they had not had available anything they could use to pull up the old engine block, so he admitted that it remained on the leased property. Lewis further explained that the AFD had planned to purchase “poly tanks” to catch the drainage from the floor of the building so that any oil or other substances would separate from the water and could be disposed of properly. At the close of the testimony, the circuit court told the parties that the problems that had occurred were not sufficient to warrant a termination of the lease, noted that further problems with the spillage of hazardous waste would likely lead to a termination of the lease, and indicated approval of the use of the “poly tanks” to prevent further spillage of hazardous materials on the leased property. Athough the circuit court declined to terminate the lease, it stated that it felt an attorney fee was appropriate because Rhodes had had to take legal action to force compliance with certain provisions of the lease.
 

 
 *743
 
 After the conclusion of the trial, the circuit court rendered a judgment stating:
 

 “1. The Court finds that there has not occurred a sufficiently material breach of the subject lease to warrant termination. The Court therefore at this time declines to terminate the lease.
 

 “2. The Court finds that the [AFD] should pay for sewer field line work in the amount of $600 and [the Rhodeses’] legal costs in the amount of $6,454.55, which total amount of $7,054.55 is taxed as court costs.
 

 “3. Costs of Court are taxed to [the AFD].”
 

 The judgment was entered in the State Judicial Information System by the circuit clerk on December 3, 2007.
 

 The AFD filed a postjudgment motion on January 2, 2008, requesting the court to reconsider the award of an attorney fee to the Rhodeses. The Rhodeses filed a post-judgment motion on January 3, 2008; the circuit court granted the AFD’s motion to strike this motion because it had not been filed within 30 days after the entry of the judgment, in violation of Rule 59(b), Ala. R. Civ. P. After the AFD’s postjudgment motion was denied on January 14, 2008, the AFD timely appealed.
 

 On appeal, the AFD argues that the circuit court erred by awarding the Rhodeses an attorney fee. According to the AFD, because the Rhodeses did not prevail on their claims, the circuit court could not have awarded an attorney fee to them. The AFD relies on
 
 Stockton v. CKPD Development Co.,
 
 936 So.2d 1065, 1083 (Ala.Civ.App.2005), in which this court affirmed a trial court’s summary-judgment order insofar as it denied the Stocktons’ claim for an award of an attorney fee. The Stocktons had relied on a provision in their lease with CKPD that provided that “ ‘[CKPD] expressly agrees to pay all expenses that [the Stocktons] may incur for reasonable attorneys’ fees ... for enforcing the terms and provisions of this Lease....’”
 
 Stockton,
 
 936 So.2d at 1083. The trial court had not awarded an attorney fee that the Stocktons had requested.
 
 Id.
 
 We affirmed the trial court’s summary judgment denying an attorney fee because the Stocktons had not prevailed
 
 on their claims to enforce the lease,
 
 and, we said, even if they had prevailed on those claims, the Stocktons had failed to present evidence in conjunction with the summary-judgment motion regarding the reasonableness of the fees that they sought.
 
 Id.
 
 at 1083. The AFD argues that, like the Stocktons, the Rhodeses failed to prevail on their claims against it and failed to present evidence of the reasonableness of the attorney fees they claimed; as a result, the AFD claims, the Rhodeses are not entitled to an attorney fee.
 

 Contrary to the AFD’s assertion,
 
 Stockton
 
 does not compel a reversal of the attorney-fee award. The Rhodeses did not prevail on their claim seeking a declaration that the lease had been properly terminated; the circuit court specifically declined to terminate the lease, concluding in its judgment that the breaches committed were not sufficiently material to warrant such an action. However, the Rhodeses resorted to legal action to force the AFD to comply with various provisions of the lease, and the circuit court ordered the AFD to comply with certain provisions of the lease in the order granting a preliminary injunction and ordered the AFD to be responsible for the $600 cost of the removal of the improperly installed field lines in its final judgment. The circuit court itself noted that the AFD had failed to comply with certain lease provisions when it explained at the close of the trial that the Rhodeses were entitled to an attorney fee.
 

 
 *744
 
 The AFD makes much of the circuit court’s use of the phrase “material breach” in the judgment. To succeed in a breach-of-contract action, a claimant must prove a material breach of the contract.
 
 Stockton,
 
 936 So.2d at 1078 (citing
 
 Sokol v. Bruno’s, Inc.,
 
 527 So.2d 1245, 1247-48 (Ala.1988)). The circuit court found the breaches of the lease claimed by the Rhodeses to be not sufficiently material to warrant a termination of the lease; however, the circuit court awarded the Rhodeses $600 and ordered, in its order granting the preliminary injunction, that the AFD take action to come into compliance with the lease. The pertinent lease provision authorizing recovery of an attorney fee permits recovery “in the event [Rhodes] employs an attorney to collect any rental or other obligations due hereunder by [the AFD], or in the event [the AFD] violates any terms[,] conditions or covenants on the part of [the AFD].... ” Recovery of an attorney fee is permitted in the event that' the AFD “violates” a term, condition, or covenant in the lease; the provision does not limit an attorney-fee award to a situation in which a material breach of the lease occurs.
 
 See Ex parte Awtrey Realty Co.,
 
 827 So.2d 104, 107-08 (Ala.2001) (quoting
 
 Smith v. Citicorp Person-To-Person Fin. Ctrs., Inc.,
 
 477 So.2d 308, 310 (Ala.1985)) (“ ‘The words of a contract are to be given their ordinary meaning, and the intention of the parties is to be derived from the provisions of the contract.’ ”); and
 
 Smith v. Ledbetter,
 
 961 So.2d 141, 145 (Ala.Civ. App.2006) (quoting
 
 Homes of Legend, Inc. v. McCollough,
 
 776 So.2d 741, 746 (Ala. 2000)) (“ ‘Where there is no indication that the terms of the contract are used in a special or technical sense, they will be given their ordinary, plain, and natural meaning.’ ”). Thus, we cannot agree with the AFD that the circuit court’s failure to find a sufficiently material breach to warrant termination of the lease is equivalent to finding that the AFD’s failures to comply with the lease did not amount to
 
 violations
 
 of the lease agreement. The circuit court implicitly found, and it indicated in its statements at trial, that the AFD had violated the lease agreement and that the AFD needed to take action to come into compliance with the agreement. The AFD has not provided any authority compelling a conclusion that a “material breach” of the lease was required in order to entitle the Rhodeses to an attorney fee under the lease.
 

 We also do not agree with the AFD that
 
 Stockton
 
 compels reversal of the attorney-fee award on the ground that the Rhodeses failed to establish the value of the services provided or the reasonableness of the attorney fees they claimed.
 
 [1]
 
 The Rhodeses presented itemized statements of the attorney fees they had incurred, Rhodes testified regarding those fees, and the trial judge himself stated at the close of the trial that he would review the requested fees for reasonableness based upon his own experience as a lawyer and a trial judge.
 
 Dent v. Foy,
 
 214 Ala. 243, 249, 107 So. 210, 216 (1925) (noting that the trial court may “call to [its] aid [its] own judgment of [the] value [of the legal services rendered], and may fix the fee accordingly”). The AFD did not object to the amount of or reasonableness of the attorney fees sought by the Rhodeses at any point during the testimony relating to those fees or in its postjudgment motion,
 
 *745
 
 although counsel for the AFD did question Rhodes about the amount of fees he had incurred before he filed his counterclaims. Because the AFD did not challenge the reasonableness of the attorney fees at any time in the circuit court or object to the circuit court’s stated intention to determine the reasonableness of the attorney fees based on the trial judge’s own experience, we will not reverse the circuit court’s award of an attorney fee on the basis that the Rhodeses failed to prove the reasonableness of those fees.
 
 Crest Constr. Corp. v. Shelby County Bd. of Educ.,
 
 612 So.2d 425, 430 (Ala.1992) (noting that an appellate court will not consider issues not raised in the trial court).
 

 AFFIRMED.
 

 THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.
 

 [1]
 

 . Although the AFD relies on the holding in
 
 Stockton,
 
 936 So.2d at 1083, affirming a denial of an attorney fee in a summary-judgment context, it does not develop its argument into an attack on the reasonableness of the attorney fee in this case; thus, we decline to determine whether the attorney fee awarded in this case is reasonable under the criteria applicable to that question.