THOMAS, Judge.
Orvid Dwight Jones and William D. Jones (hereinafter sometimes referred to collectively as “the Jones defendants”) appeal from a judgment of the Blount Circuit Court in favor of Daryl R. Sherrell on his claims regarding his disassociation from and the dissolution of The Great Pumpkin Patch (“the GPP”), a partnership that the parties had formed and operated.

Facts and Procedural History

In 1992, Sherrell, William, and Jim Brand formed the GPP. The GPP operated a working pumpkin farm where people could, for a fee, harvest a pumpkin from its fields, purchase foods and beverages, and participate in other activities. The GPP was typically open to the public during October of each year. After the GPP’s first year of operation, Orvid replaced Brand as the third partner in the GPP and the GPP began operating on a parcel of property owned by Orvid, where it continued to operate at all times relevant to this case. The parties did not create a written partnership agreement; however, the parties orally agreed that each would own a one-third share in the GPP and that the parties would equally share in the GPP’s profits and liabilities.
In 2005, Sherrell’s wife, Alice, filed for a divorce. Thereafter, the Jones defendants excluded Sherrell from the operations of the GPP.[1] The GPP continued to operate during 2005 and 2006; the GPP ceased its operations at the end of 2006. The Jones defendants did not pay Sherrell a distribution of the GPP’s profits in 2005, and they did not pay Sherrell for his one-third ownership interest in the GPP.
Sherrell sued the Jones defendants, requesting that the trial court dissolve the GPP, conduct an accounting, and supervise the winding up of the GPP’s affairs, pursuant to the Uniform Partnership Act (“the UPA”), codified at Ala.Code 1975, § 10-8A-101 et seq. In his complaint, Sherrell also claimed that the Jones defendants had breached their fiduciary duty to Sherrell, pursuant to § 10-8A-404 of the UPA, and that the Jones defendants had converted partnership assets for the Jones defendants’ personal use. Sherrell further requested that the trial court impose a constructive trust on the assets and proceeds of the GPP. The trial court held a hearing on Sherrell’s complaint, at which it heard ore tenus evidence.
Sherrell handled the finances for the GPP from its inception through 2004. *530 Sherrell testified that he and sometimes William and/or Alice would count the money at the end of each day and that Sherrell would then take the money home and keep it in a safe. Sherrell would deposit some of the money in the bank each week to ensure that the GPP had enough money to cover its expenses. Sherrell further testified that he delivered the financial information to the accountant who prepared the income-tax forms for the GPP each year through 2004. According to Sherrell, the parties agreed that they would not keep any written records of the GPP’s revenues and that they would not report all the GPP’s income to the Internal Revenue Service (“IRS”). Sherrell stated that the GPP had underreported its income to the IRS every year that he was actively involved with the GPP. According to Sher-rell, at the end of each year the parties would split whatever cash had accumulated in the safe at Sherrell’s house. Sherrell testified that he had received a $30,000 cash distribution from the GPP in 2004. William also admitted that he had received approximately $30,000 in cash as a distribution in 2004.
In 2001, the GPP borrowed $185,000 to add a Christmas-lights display to the attractions at the GPP. The GPP made periodic payments on the loan until it was paid off in 2008. After 2004, Sherrell did not contribute to the payment of the remaining loan balance.
Sherrell testified that in 2004 approximately 500 schoolchildren had visited the GPP each weekday during the monthlong season when it was open. Sherrell also testified that between 3,000 and 5,000 people had visited the GPP on each weekend. Sherrell further testified that, from his personal observations, the attendance in the following years had been similar to the attendance in 2004. Martha Franklin, an employee of the GPP, and Franklin Lackey, a private investigator hired by Sher-rell, each observed the operation of the GPP in October 2006 and testified as to their estimates of the number of vehicles in the parking lot, the number of attendees, and the average amount of money spent per person at the GPP. Franklin’s and Lackey’s observations corresponded with Sherrell’s observations that attendance at the GPP in 2005 was equivalent to the attendance in 2004.
Alice testified that she began handling the finances for the GPP after Sherrell was excluded from its operation. According to Alice, she deposited in the bank all the revenue earned by the GPP in 2005; she stated that no money was held back except for a small amount that the GPP had needed for its daily operation. Alice further testified that there was no cash left over at the end of 2005 after the GPP had made its payment on the outstanding Christmas-lights-display loan. William testified that his share of the distribution of the profits for 2005 was $7,621. William and Alice both testified that the GPP had a lower profit in 2005 even though its reported revenue had increased as compared to 2004. Alice also testified that fewer people had visited the GPP in 2005 than in 2004.
According to William, Sherrell had retained the checkbook for the GPP and the money left in Sherrell’s safe at the beginning of 2005. Sherrell admitted that he had retained the money that was in his safe at the beginning of 2005 and the checkbook for the GPP account. Sherrell stated that the safe had contained an unknown amount of money in change and that the GPP account had contained approximately $6,000 at the end of 2004.
Jackie Pearce, an expert witness on the subject of business evaluation, testified that he had reviewed the available financial information relating to the GPP and *531 had concluded that the revenue and profit reported on the GPP’s 2005 income-tax return was less than the GPP’s actual revenue and profit. Pearce stated that he had reached his conclusion after personally observing the business operation and after reviewing Franklin’s and Lackey’s reports, the GPP’s bank records for 2005 and 2006, the school-group-reservation logs, and the GPP’s tax returns for 2005 and 2006. Pearce stated that, based on his evaluation, Sherrell should have received $30,000 as a distribution for his share of the GPP’s profits in 2005.
The trial court entered a judgment dissolving the GPP, awarding Sherrell $30,000 as a partnership-profit distribution for 2005, $32,167 as Sherrell’s partnership interest in the GPP, $12,744.24 in prejudgment interest, and $20,000 as an attorney fee. In its judgment, the trial court offset the amounts awarded to Sherrell by $34,077.90, representing Sherrell’s portion of the outstanding debt of the GPP at the time of Sherrell’s disassociation. Both Sherrell and the Jones defendants filed postjudgment motions, which the trial court denied. The Jones defendants appealed to the Alabama Supreme Court, and that court transferred this case to this court, pursuant to Ala.Code 1975, § 12-2-7(6).

Issues

The Jones defendants raise three issues in their appeal: (1) whether the trial court had sufficient evidence to support its award to Sherrell of $30,000 as a partnership-profit distribution for 2005 and $32,167 as Sherrell’s interest in the GPP; (2) whether the trial court erred when it awarded Sherrell prejudgment interest; and (3) whether the trial court had sufficient evidence to support its award of an attorney fee to Sherrell.

Standards of Review

The trial court based its partnership-profit-distribution award and its partnership-interest award on disputed evidence that it heard ore tenus.
“ ‘ “ ‘[W]hen a trial court hears ore tenus testimony, its findings on disputed facts are presumed correct and its judgment based on those findings will not be reversed unless the judgment is palpably erroneous or manifestly unjust.’ ” ’ Water Works & Sanitary Sewer Bd. v. Parks, 977 So.2d 440, 443 (Ala.2007) (quoting Fadalla v. Fadalla, 929 So.2d 429, 433 (Ala.2005), quoting in turn Philpot v. State, 843 So.2d 122, 125 (Ala.2002)). ‘ “The presumption of correctness, however, is rebuttable and may be overcome where there is insufficient evidence presented to the trial court to sustain its judgment.” ’ Waltman v. Rowell, 913 So.2d 1083, 1086 (Ala.2005) (quoting Dennis v. Dobbs, 474 So.2d 77, 79 (Ala.1985)). ‘Additionally, the ore tenus rule does not extend to cloak with a presumption of correctness a trial judge’s conclusions of law or the incorrect application of law to the facts.’ Waltman v. Rowell, 913 So.2d at 1086.”
Retail Developers of Alabama, LLC v. East Gadsden Golf Club, Inc., 985 So.2d 924, 929 (Ala.2007). “The ore tenus standard of review extends to the trial court’s assessment of damages.” Edwards v. Valentine, 926 So.2d 315, 325 (Ala.2005). The trial court’s determination whether prejudgment interest is available is a question of law; therefore, we review it de novo. Jernigan v. Happoldt, 978 So.2d 764, 767 (Ala.Civ.App.2007).
“ ‘An award of attorney fees, where permissible, is a matter within the discretion of the trial court and will not be reversed on appeal absent a showing that the trial court abused its discretion.’ ” Feil v. Wittern Group, Inc., 784 So.2d 302, 315 (Ala.Civ.App.2000) (quoting ISS Int'l Serv. Sys., Inc. v. Alabama Motor Express, Inc., 686 So.2d 1184, 1189 (Ala.Civ. App.1996)).

*532
Analysis

The Jones defendants first argue that the evidence was insufficient to support the trial court’s award to Sherrell of $30,000 as a distribution of his share of the GPP’s profits for 2005 because, the Jones defendants say, the damages were based on speculation and conjecture.
“It is true that damages may be awarded only where they are reasonably certain. Damages may not be based upon speculation. Industrial Chemical & Fiberglass Corp. v. Chandler, 547 So.2d 812 (Ala.1988); see also Alabama Power Co. v. Alabama Public Service Commission, 267 Ala. 474, 103 So.2d 14 (1958)....’ ... [The plaintiff] must produce evidence tending to show the extent of damages as a matter of just and reasonable inference.’ C. Gamble, Alabama Law of Damages § 7-1 (2d ed. 1988), as cited in Industrial Chemical, supra, at 820. The rule that one cannot recover uncertain damages relates to the nature of the damages, and not to their extent. If the damage or loss or harm suffered is certain, the fact that the extent is uncertain does not prevent a recovery. Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544 (1931); see also Shook v. Vertagreen Credit Union, 460 So.2d 1343 (Ala.Civ.App.1984).”
Jamison, Money, Farmer & Co. v. Standeffer, 678 So.2d 1061, 1067 (Ala.1996). The Alabama Supreme Court has further stated that
“ ‘[t]he uncertainty which prevents a recovery is uncertainty as to the fact of the damage and not as to its amount and ... where it is reasonably certain that damage has resulted, mere uncertainty as to the amount will not preclude the right to recovery or prevent a ... decision awarding damages. This view has been sustained where, from the nature of the case, the extent of the injury and the amount of the damage are not capable of exact and accurate proof. Under such circumstances, all that can be required is that the evidence — with such certainty as the nature of the particular case may permit — lay a foundation which will enable the trier of facts to make a fair and reasonable estimate of the amount of damage. The plaintiff will not be denied a substantial recovery if he has produced the best evidence available and it is sufficient to afford a reasonable basis for estimating his loss.’ ”
Ricwil, Inc. v. S.L. Pappas & Co., 599 So.2d 1126, 1132 (Ala.1992)(quoting United Bonding Ins. Co. v. W.S. Newell, Inc., 285 Ala. 371, 380, 232 So.2d 616, 624 (1969)).
In this case, Sherrell submitted the testimony of Jackie Pearce, a certified public accountant, who was tendered as an expert in business evaluation. Pearce testified that he determined that Sherrell should have received $30,000 as a partnership-profit distribution in 2005. Pearce based his expert opinion on his interviews with Sherrell, a review of William’s deposition testimony, Pearce’s observations of the business operation, the available documentation concerning school-group visits, the history of partnership distributions, the 2005 and 2006 tax returns, and the 2006 bank statements. Pearce’s testimony goes beyond mere speculation and conjecture; rather, it is based on an expert analysis of the best information available relating to the operation of the business. Thus, Pearce’s testimony went beyond mere speculation or conjecture and provided the trial court with a sufficient basis for its determination of the amount of the 2005 partnership-profit distribution that it awarded to Sherrell. Ricwil, Inc., supra.
The Jones defendants state in the issue statement in their brief that the *533 evidence is insufficient to support the trial court’s award of $82,167 as the value of Sherrell’s partnership interest in the GPP. However, the Jones defendants do not make any argument concerning the partnership-interest award in their brief. “‘An argument not made on appeal is abandoned or waived.’ ” Muhammad v. Ford, 986 So.2d 1158, 1165 (Ala.2007) (quoting Avis Rent A Car Sys., Inc. v. Heilman, 876 So.2d 1111, 1124 n. 8 (Ala.2008)). Therefore, we need not further consider this issue.
Secondly, the Joneses argue that Sherrell was not entitled to an award of prejudgment interest. In support of their argument, the Jones defendants cite Kennedy v. Polar-BEK & Baker Wildwood, 682 So.2d 443 (Ala.1996), for the proposition that in a breach-of-contract action prejudgment interest is properly awarded when the amount in controversy is a sum certain. However, Kennedy is inapposite.
Sherrell’s action is not a breach-of-contract action; rather, Sherrell brought his action under the UPA, which allows for the award of prejudgment interest in an action to determine the amounts owed to a disassociated partner. See Ala.Code 1975, § 10-8A-701(i) (stating that a court shall include the amount of any accrued interest in its award to a disassociated partner) and subsection 3 to Comment to § 10-8A-701 (stating that “[s]ince the buyout price is based on the value of the business at the time of dissociation, the partnership must pay interest on the amount due from the date of dissociation....”). Because the UPA authorizes an award of prejudgment interest and because the Jones defendants make no other argument concerning the prejudgment-interest award, we find no error on the part the trial court on this issue.
Finally, the Jones defendants argue that the evidence before the trial court was insufficient to support its award of $20,000 as an attorney fee. During the trial, Sherrell introduced into evidence a summary of his claimed damages. In that summary, Sherrell listed that he had paid $21,710.92 in attorney fees and that he had been billed for an additional $25,222.18 in attorney fees. The Jones defendants did not object to the introduction of this evidence, and they did not challenge the reasonableness or accuracy of Sherrell’s claimed attorney fees. The Jones defendants also did not challenge the trial court’s award of an attorney fee in their postjudgment motion. It is well settled that “[t]his Court cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court.” Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992). Because the Jones defendants did not make any argument in the trial court concerning the reasonableness of its award of an attorney fee, they have waived that argument on appeal. See Abernant Fire Dep’t v. Rhodes, 21 So.3d 739, 745 (Ala.Civ.App.2009) (holding that when a party does not challenge the reasonableness of the award of an attorney fee in the trial court that party waives that argument on appeal).

Conclusion

Because the Jones defendants have not shown any error by the trial court in its determination of damages, its award of prejudgment interest, or its award of an attorney fee, the trial court’s judgment is due to be affirmed.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.

. Orvid is Alice's father, and William is Alice's brother.