PITTMAN, Judge.
Timothy Blake O’Barr (“the father”) appeals from a judgment of the Morgan Circuit Court modifying the judgment divorcing him from Dusty Herron O’Barr (“the mother”). We affirm the judgment in part, reverse the judgment in part, and remand the case to the trial court.
The parties were divorced by a judgment of the trial court on June 16, 2011. That judgment, among other things, awarded the mother sole legal and physical custody of the parties’ son and daughter, subject to the father’s visitation. Following the entry of that judgment, the trial *1079 court entered a postjudgment order, modifying the divorce judgment to award the mother the parties’ master-bedroom suite and to incorporate an amended visitation schedule.
On May 23, 2012, the father filed a petition seeking a finding of contempt against the mother, asserting that the mother was in contempt of the parties’ divorce judgment because she allegedly had, among other things, regularly denied the father visitation with the parties’ minor children as set forth in the divorce judgment. The mother filed an answer to the father’s petition and a counterclaim in which she sought a contempt finding against the father, asserting, among other things, that the father had failed to abide by portions of the divorce judgment by failing to inform the mother regarding any change in his residence in accordance with the Alabama Parent-Child Relationship Protection Act (Ala.Code 1975, § 30-3-160 et seq.); by forbidding the children to attend church and social events during his visitation periods despite the trial court’s instructions that the children should be allowed to participate in school, church, athletic, social, and extracurricular activities; by failing to abide by the visitation schedule; by failing to pay $820 in child support by July 1, 2011, and making only a partial payment of $378.46 on July 25, 2011; by failing to make the installment payments on the first- and second-mortgage indebtedness on the marital residence; by failing to comply with the portion of the divorce judgment directing the father not to threaten, harass, 'intimidate, stalk, annoy, embarrass, or disturb the peace and privacy of the mother; and by willfully disposing of or refusing to give to the .mother the parties’ master-bedroom suite that was awarded to the mother by the postjudgment order. The mother also sought, among other things, a modification of the parties’ divorce judgment, requesting that the trial court award the father supervised visitation with the parties’ children, with unsupervised visitation to resume upon his completion of anger-management classes; an award to the mother, rather than the father, of the income-tax deduction for the minor children; and a requirement that the father pay all litigation expenses, including the mother’s attorney’s fees.
The trial court entered a judgment on July 25, 2013. In that judgment, the trial court made findings of fact and concluded, among other things, that the mother was not in contempt of court; that the father was in civil contempt of court for having willfully failed to pay the total amount of child support owed for July 2011 and for refusing- to turn over the master-bedroom suite that the mother had been awarded in the postjudgment order; and that the father was in criminal contempt of court for his refusal to notify the mother of his new address, for his refusal to return the parties’ daughter to the mother on the daughter’s birthday, for his refusal to return both children to the mother in 2012 for Easter, for his refusal to allow the daughter to attend a church event during one of his visits, and for harassing and threatening the mother on March 16 and 18, 2012. The trial court also, among other things, amended the divorce judgment to allow the mother to claim the children as dependents for income-tax purposes; to require both parents to enroll in and complete the “Together We Can” six-week program provided by the organization Parents and Children Together (“PACT”); to require the father to undergo an assessment to determine if he needs additional anger-management training or other treatment or therapy to address how he relates to the children and the. mother; to require the mother to arrange for the parties’ children to be evaluated by a licensed counsel- *1080 or or mental-health professional; to require the father to provide the mother with his address and to.comply with the requirements of the Alabama Parent-Child Relationship Protection Act in the future; and to provide that while the father shall have no forced visitation or contact with the children, the father could petition the court for renewed visitation following his completion of the PACT program and additional assessment regarding anger management or other treatment. Pursuant to the trial court’s judgment, in order to purge his civil contempt, the father was required to pay $441.54 to the mother before August 16, 2013, representing the amount of child support he owed for July 2011; to deliver the master-bedroom suite to the mother on August 17, 2013; and to pay an attorney fee to the mother in the amount of $1,000. For the findings of criminal contempt, the trial court sentenced the father to serve three days in jail for each adjudicated act of contumacy; however, it suspended the applicable sentences, placed the father on 24 months of unsupervised probation, and ordered that, during that 24-month period, the father was required to strictly comply with the orders of the judgment and to engage in no further acts of criminal or civil contempt. The trial court stated that any remaining requests for relief were denied.
The father timely filed a postjudgment motion. The mother filed a response. The trial court entered an order that, among other things, extended the deadlines for the father to pay the judgment for his child-support arrearage, to deliver the master-bedroom suite to the mother, and to pay the attorney’s fee to the mother. The father timely filed his notice of appeal to this court.
The father first argues on appeal that the trial court erred in finding him in civil and criminal contempt.
“ ‘The issue whether to hold a party in contempt is solely within the discretion of the trial court, and a trial court’s contempt determination will not be reversed on appeal absent a showing that the trial court acted outside its discretion or that its judgment is not supported by the evidence. Brown v. Brown, 960 So.2d 712, 716 (Ala.Civ.App.2006) (affirming a trial court’s .decision not to hold a parent in contempt for failure to pay child support when the parent testified that he had deducted from his monthly child-support payment the amount he had expended to buy clothes for the children).’
“Poh v. Poh, 64 So.3d 49, 61 (Ala.Civ.App.2010).
“ ‘Rule 70A, Ala. R. Civ. P., has governed contempt proceedings in civil actions since July 11, 1994. Rule 70A(a)(2)(D) defines “civil contempt” as a “willful, continuing failure or refusal of any person to comply with a court’s lawful writ, subpoena, process, order, rule, or command that by its nature is still capable of being complied with.” ’
“Stamm v. Stamm, 922 So.2d 920, 924 (Ala.Civ.App.2004). To hold a party in contempt under either Rule 70A(a)(2)(C)(ii) (criminal contempt) or (D) (civil contempt), Ala. R. Civ. P., the trial court must find that the party willfully failed or refused to comply with a court order. T.L.D. v. C.G., 849 So.2d 200, 205 (Ala.Civ.App.2002).”
Bridges v. Bridges, 69 So.3d 885, 888-89 (Ala.Civ.App.2011).
The trial court found the father in civil contempt for having willfully failed to pay his child-support obligation for July 2011 and for refusing to give to the mother the master-bedroom suite that she had been awarded. The father cites Hollis v. *1081 State ex rel. Hollis, 618 So.2d 1350 (Ala.Civ.App.1992), in support of his assertion that the circumstances in the present case support a finding of an arrearage, but not a finding of contempt. In that case, this court determined that, because both parties had testified that they had agreed that the former husband no longer had to make child support payments, that agreement supported a finding of an arrearage, but not a finding of contemptuous behavior on the part of the husband. 618 So.2d at 1351-52. The father fails to indicate circumstances in the present case similar to those in Hollis that might relieve him of a finding of contempt. Rather, the father testified that, as far as he knew, he was not behind in his child support. The divorce judgment ordered that child-support payments were to be made via a continuing child-support income-withholding order but that, until the withholding of his income began, the father was obligated to make his child-support payments directly to the Alabama Child Support Payment Center. The father testified that his child-support payments are withheld from his paycheck and that he had never received a letter or a printout from the State showing that he was behind in his payments. The mother testified that she had received $378.46 from the father in July 2011 for child support, that she had received that amount before the child support began being withheld from the father’s paycheck, and that she had never received the $441.54 balance that the father owed for that month. Thus, unlike in Hollis, the father failed to demonstrate that he had withheld the child-support payment based on his mistaken belief that an agreement with the mother had allowed him to do so. Clearly, the father was aware of the judgment requiring him to pay child support directly until the withholding order was entered, as evidenced by his partial payment. The father failed to give a reason for his failure to pay the complete amount.
The father also cites In re Carter, 412 So.2d 811, 812 (Ala.Civ.App.1982), which states that “[a] judgmental error, if conceded, without clear and convincing evidence of bad faith intent, is an insufficient foundation for a finding of criminal contempt.” We note that the father was adjudged guilty of civil, rather than criminal, contempt for his failure to pay child support, and the father’s testimony did not indicate that his failure to pay the full amount of child support was a judgmental error. Thus, Carter is inapplicable to the present case. We affirm the trial court’s judgment of civil contempt with regard to the father’s failure to pay child support.
The father also argues that the trial court erred in finding him in civil contempt for his failure to give the mother the master-bedroom suite. Specifically, he asserts that he does not have the master-bedroom suite and, thus, does not have the ability to purge himself of the contempt. The father testified that, after the divorce was final, the mother had gone to the marital home on July 9, 2011, with Chris Ogle to retrieve items awarded to the mother in the divorce judgment. According to the father, he had “called the law” and asked them to remove Ogle from the property; the father had ultimately been arrested; and, when he returned to the house after being released from jail, the master-bedroom suite was no longer at the residence. Ogle testified that he and the mother are friends and that, on July 9, 2011, when he and the mother had left the residence, the father’s mother and sister were still at the house and the master-bedroom suite was in the house at that time. The mother also testified that the master-bedroom suite had been at the residence on “moving day.” The parties’ daughter, Lizzie, stated that, when she had *1082 visited the father at the marital home in July 2011 after the moving day, the master-bedroom furniture was still in the house. The parties’ son, Elliott, also testified that the master-bedroom suite was still at the house when he and Lizzie had visited in July 2011.
“This court is not allowed to substitute its judgment for that of the trial court when the trial court’s decision is supported by reasonable inferences that can be derived from the ore tenus evidence presented. [Ex parte] Pielach, 681 So.2d 154 (Ala... 1996). The trial judge is in the better position to observe the witnesses and to assess their credibility. Id. at 154-55.”
Watts v. Watts, 706 So.2d 749, 751-52 (Ala.Civ.App.1997).
In Sealy v. D’Amico, 789 So.2d 863, 866 (Ala.Civ.App.2000), this court concluded that, because the circuit court had evidence before it from which it reasonably could have concluded that Sealy had, or could obtain, money to purge himself of the contempt, the circuit court had not abused its discretion in finding Sealy in contempt or in ordering his incarceration. In the present case, the trial court indicated at the hearing on the father’s post-judgment motion that it did not believe the father’s testimony that the furniture was not still in the home after his incarceration on the day the mother retrieved her items. Based on Watts and Sealy, we conclude that there is evidence in the record supporting a finding that the father retained the master-bedroom suite, and we affirm the contempt finding against the father for his failure to deliver that, furniture to the mother.
The father argues that the trial court erred in ordering him to pay $1,000 toward the mother’s legal fees as a condition of purging his civil contempt. The father fails, however, to cite any authority in support of this argument. See Rule 28(a)(10), Ala. R.App. P., and Butler v. Town of Argo, 871 So.2d 1, 20 (Ala.2003) (“ ‘[I]t is not the function of this Court to do a party’s legal research or to make and address legal arguments for a party....’” (quoting Dykes v. Lane Trucking, Inc., 652 So.2d 248, 251 (Ala.1994))). To the extent the father argues that, under Rule 70A, Ala. R. Civ. P., the trial court’s order that the father is to be incarcerated if he fails to purge his civil contempt by, among other things, paying $1,000 toward the mother’s legal fees is “not appropriate,” we note that the father failed to preserve this argument for appeal by first presenting it to the trial court. Therefore, that issue is waived. See Jones v. Sherrell, 52 So.3d 527, 533 (Ala.Civ.App.2010).
The father argues that the trial court erred in finding him in criminal contempt for his refusal to notify the mother of his new address, to return Lizzie to the mother on Lizzie’s birthday, to return both children to the mother for Easter in 2012, to allow Lizzie to attend a church event during one of his visits, and for harassing and threatening the mother on March 16 and 18, 2012.
“[T]he standard of review in an appeal from an adjudication of criminal contempt occurring in a civil case is whether the offense, i.e., the contempt, was proved beyond a reasonable doubt. Hicks v. Feiock, 485 U.S. 624, 108 S.Ct. 1423, 99 L.Ed.2d 721 (1988); Combs v. Ryan’s Coal Co., 785 F.2d 970 (11th Cir.1986); and United States v. Turner, 812 F.2d 1552 (11th Cir.1987).... In Turner, the Court, in discussing the standard of review in a criminal-contempt case, said:
“ ‘The essential elements of the criminal contempt for which punishment has been imposed on [the defendant] are that the court entered a *1083 lawful order of reasonable specificity, [the defendant] violated it, and the violation was wilful. Guilt may be determined and punishment imposed only if each of these elements has been proved beyond a reasonable doubt.’
“Turner, 812 F.2d at 1563. The Turner court also stated, quoting Gordon v. United States, 438 F.2d 858, 868 n. 30 (5th Cir.1971):
“ ‘ “The test is whether the evidence is sufficient to justify the trial judge, as trier of the facts, in concluding beyond a reasonable doubt that the defendant was guilty, and that such evidence is inconsistent with any reasonable hypothesis of his innocence. Such is the substantial evidence test.” ’
“Turner, 812 F.2d at 1563.”
Ex parte Ferguson, 819 So.2d 626, 629 (Ala.2001).
The father argues that the trial court’s, finding that the father had refused to give the mother written notice of his new address after he moved from the parties’ former marital residence is not substantiated by the record. He argues that, at most, the evidence revealed that Lizzie had asked for his address and that he had refused to provide it to her. We disagree.
The addendum to the parties’ divorce judgment (which, we note, contains the language required by our legislature to be included in child-custody determinations, see Ala.Code 1975, § 30-3-166) states, in pertinent part:
“Alabama Law requires each parent in this case who has either custody of or the right of visitation with a child to notify the other parent who has custody of or the right of visitation with the child of any change in his or her address.... ”
The order requires the relocating parent to give notice of the proposed change of principal residence by certified mail. The father testified that he had moved to the home of his father, Jerry, in Athens in September 2011 and that he “believed” he had provided the mother proper notice of where he was moving when they had talked, although, he admitted, he had not sent her any paperwork or a certified letter informing her of his new address. Jerry testified that, at the time of the trial, the father had lived with him for approximately a year and a half. The children both testified, however, that the father did not have a bedroom at Jerry’s house, that they had not seen the father’s belongings there, and that he had brought luggage with him, as they did, when he and the children stayed at Jerry’s house. Additionally, Lizzie testified that she had asked the father where he lived and that he had replied that “it wasn’t [her] D-A-M-N business.” Because the father admitted that he had not given the mother notice of his new address by certified mail and because the testimony supports a finding that the father was untruthful about his residence, the trial court was within its discretion to conclude that the father had violated its order and that his violation was wilful.
The father also argues that “failure to provide certified mail notification or any notice of the change of address does not rise to the level of criminal contempt” and that “[a] party facing criminal contempt and possible jail time is required to be notified in order to prepare his criminal defense.” Again, however, the father has failed to cite any authority in support of either of those assertions. See Rule 28(a)(10), and Butler, supra. Moreover, we note that the mother identified the father’s failure to provide her with his new address in her counterclaim for contempt; thus, the father was on notice of that claim. We, therefore, affirm the trial court’s order of contempt with regard to *1084 the father’s failure to notify the mother of any change in his address.
The father next argues that the trial court erred in finding him guilty of criminal contempt for his refusal to return Lizzie to the mother on Lizzie’s birthday and to return the children to the mother for Easter in 2012. With regard to the mother’s visitation on Lizzie’s birthday in July 2011, the mother testified that she had sent the father a text message, that he had not replied, and that she had not seen Lizzie on her birthday, as ordered in the divorce judgment. The father testified that he had not intentionally withheld visitation from the mother, that Lizzie had not asked him if she could see the mother on that day, and that he had never been made aware that the mother was supposed to have Lizzie on her birthday that year. Lizzie testified that, on her birthday, July 17, 2011, she was visiting the father. She stated that the mother had told her that she was supposed to visit with Lizzie on her birthday and that she had had a conversation with the father about going to see the mother on her birthday. She testified that she had asked the father if she could see the mother and that he had said “no” and that it did not state in the divorce judgment that she was to visit the mother on her birthday. According to Lizzie, the father had shown her the divorce judgment, she had pointed to the clause that stated she was to see the mother on her birthday, and the father had said, “[W]ell, I’m not going to get up and take you.” Elliott also testified that, on Lizzie’s birthday, Lizzie had asked the father if she could visit the mother, that the father had said “no” and that it was his weekend, and that a conversation about the divorce judgment had ensued.
With regard to the Easter visitation, the mother testified that the father had not answered his telephone on Easter 2012, that she had phoned the father’s father, Jerry, and that the father had returned the children to her at 6:30 p.m., rather than 8:00 a.m., as required by the divorce judgment. The father testified that he had not kept the children on Easter purposefully. He stated that they had gone to his sister’s house to grill and to hide Easter eggs and that, when he has the children, he usually keeps his phone in his truck. He stated that his father had contacted him around 4:30 or 5:00 p.m. on that day to tell him that the. mother was upset and wanted the children home. The father stated that Elliott had sent the mother a text message to see. if they could stay late, that Elliott had said the mother had said “okay” when he informed her it would not be long, and that he had “assumed that everything was hunky-dory.” According to the father, the children had been having a good time, and he had not realized that his weekend was to be cut short. He denied having heard a message left by the mother on the answering machine or having told the children not to answer the phone when the mother was leaving the message. Lizzie testified that, on Easter 2012, she had awakened and had gotten ready because she and Elliott were supposed to go to church with the mother. She stated that the mother had called Jerry’s phone that morning and that she had listened as the mother left a message on the answering machine. According to Lizzie, she had looked at the father while the mother was leaving the message and he said: “[Djon’t you dare get up and go touch that phone.” Lizzie also testified that, when she visited the father, he would keep his cellular telephone on him, rather than leave it in the truck. Elliott testified also that he and Lizzie had known that they were supposed to be with the mother on Easter, that they had heard the mother’s message on the answering machine, and that the father had “looked at [the *1085 children], like, you better not pick up that phone.”
The father attempts to point out similarities in the children’s testimonies, their isolation from the father in the months preceding the trial, and their negative testimony regarding the father in the present case as an indication that their testimony is unreliable. According to our standard of review, however, the trial court was in a better position to observe the witnesses and determine their credibility, and we are bound by the ore tenus rule. See Watts, supra. Moreover, we note that the trial court stated in its judgment, in pertinent part:
“There is no credible evidence that the refusal of Elliott and Lizzie to visit with [the father] has resulted solely from their following the coaching and wishes of their mother. Both children are articulate and seem more insightful and mature than other children of similar ages. Thé evidence is abundant that their unwillingness to visit with their father is based on a reasonable foundation.”
Based on the record on appeal, we conclude that the evidence supports a finding by the trial court that the father had wil-fully violated its orders regarding visitation on Lizzie’s birthday and on Easter 2012, and, thus, we affirm the finding of contempt therefor.
 The father next argues that the trial court erred in holding him in criminal contempt for his refusal to allow Lizzie to attend a church event during one of his visits. The divorce judgment states, in pertinent part:
“The children shall be allowed to participate in school, church, athletic, social and extracurricular activities to the same extent and in the same manner they did so before the parties separated. Neither party shall schedule discretionary activities for either child which will interfere with the other party’s visits with or periods of physical custody of the children.”
Lizzie testified that she had asked the father at times to take her to friends’ birthday parties or to church events and that he would not take her. She stated that she had asked him. to take them to church during a visit and that he would not because, he had said, there were too many of the mother’s friends there. There is no indication in the record, however, as to what extent the children were allowed to participate in church events before the parties’ separation, the type of event Lizzie had wanted to attend, or that the father had not allowed the children to attend events to the same extent as they had before the parties separated. Moreover, the trial court’s order in the divorce judgment is not of sufficient specificity to put the father on clear notice that his failure to allow Lizzie to attend a single church event would result in his being held in contempt. We, therefore, reverse the trial court’s judgment insofar as it held the father in contempt for his refusal to allow Lizzie to attend a church event during his visitation. The mother argues that Lizzie’s testimony that, on Easter 2012, she and Elliott had woken up and had gotten ready because they were supposed to go to church with the mother but that, as discussed above, the father had not returned the children for visitation with the mother at that time supports the trial court’s separate finding of contempt regarding the failure to allow Lizzie to attend a church event. We decline, however, to uphold the trial court’s finding of two different counts of contempt based on the same occurrence.
The father next argues that the trial court erred in holding him in contempt for harassing and threatening the mother on March 16 and 18, 2012, “by *1086 screaming, making obscene gestares and threatening to take her to court.” The •divorce judgment states, in pertinent part:
“Neither the [mother] nor the [father], including any of their agents or designees, shall (a) threaten, harass, molest, intimidate, injure, stalk, annoy, embarrass or disturb the peace and privacy of the other party, by any direct or indirect means whatsoever....”
With regard to March 18, 2012, the mother testified that, when she picked up the children following their visit with the father on that date, the father had made an obscene hand gesture toward her and had suggested (in the presence of the children) that he was going to take her back to court and get custody of the children. The children also testified, although they did not specify dates, that they had heard the father call the mother names during visitation exchanges and that they had witnessed the father “shoot the bird” at the mother and threaten to have her put in jail. When asked whether, in March 2012, he had threatened to obtain custody of the children, the father stated that he “may have said [he] may have to go back to court to try to get custody.” To the extent the father is correct that there was no testimony speaking directly to events that occurred on March 16, 2012, we note that any error in that regard is harmless. See Rule 45, Ala. R.App. P. There is no indication that the father was prejudiced by the trial court’s inclusion of March 16, 2012, when the trial court’s order regarding the father’s harassment and threats toward the mother on March 18, 2012, are supported by the evidence.
The father also argues that the trial court’s May 8, 2013, order, which set a date for a hearing on the mother’s counterclaim for a contempt finding against the father, did not alert him to possible findings of contempt for harassment or threats and that, therefore, he could not have been “expected to prepare to defend against criminal charges without proper notice.” We note that the father fails to cite any authority in support of that assertion, see Rule 28(a)(10) and Butler, supra; that the father failed to present that argument to the trial court and, thus, the issue is waived on appeal, see Jones, supra; and that the mother'asserted in her counterclaim for a contempt finding against the father that he had threatened, harassed, intimidated, stalked, annoyed, embarrassed, and disturbed the mother’s peace and privacy, thereby placing the father on notice of the contempt charges against him for harassment and threatening behavior. We therefore affirm the trial court’s finding of contempt based on the father’s harassing and threatening behavior toward the mother.
The father next argues on appeal that the trial court erred in failing to find the mother in contempt for her failure to allow the father visitation with the children and to send the children to counseling as ordered by the divorce judgment and for her violation of the requirement in the divorce judgment that neither party have an unrelated person of the opposite sex as an overnight guest in the presence of the children. With regard to the assertion regarding counseling, we note that the father failed to raise that potential ground for a contempt finding before the trial court at any time, and, thus, that issue is waived. See Jones, supra. With regard to the mother’s alleged failure to exchange the children for visitation with the father, the trial court’s judgment .states, in pertinent part:
“The Court concludes that [the mother] has made conscious and willful decisions to not force the parties’ children to visit their father as directed in the Judgment of Divorce. She would be found in *1087 criminal ■ contempt of court except for the substantial evidence that [the father] bears more responsibility than her for the refusal of Elliott and Lizzie to visit with him. Through his own inappropriate conduct and subtle mistreatment since the divorce, he has alienated the children from him. No good would result, and it would not be in the best interests of Elliott and Lizzie at the present time for visitation to be forced.”
The trial court’s judgment is supported by the evidence. We conclude that the determination not to hold the mother in contempt was not an abuse of the trial court’s discretion, and we decline to reverse the judgment in that regard. Insofar as the father argues that the mother admitted that she had spent part of the children’s spring break with her boyfriend in violation of the divorce judgment, we note that the mother testified that her boyfriend had come to Florida during spring break. Her testimony proved nothing but that her boyfriend had been in Florida and did not prove beyond a reasonable doubt that the mother had violated the mandate in the divorce judgment that neither party have an unrelated person of the opposite sex as an overnight guest in the presence of the children. We affirm the trial court’s judgment insofar as it declined to hold the mother in contempt.
The father last argues on appeal that the trial court erred in modifying the divorce judgment to allow the mother to claim the children as dependents for income-tax purposes.
“In Duke v. Duke, 872 So.2d 153 (Ala.Civ.App.2003), this court held that, when a trial court ratifies an agreement to deviate from the Rule 32[, Ala. R. Jud. Admin.,] child-support guidelines, that agreement may be modified upon a showing of a substantial and continuing material change from the circumstances that had resulted in the initial deviation. For the purposes of modifying child support, ‘“[f]actors indicating-a change of circumstances include a material change in the needs, conditions, and circumstances of the child.” ’ Duke, 872 So.2d at 156 (quoting State ex rel. Shellhouse v. Bentley, 666 So.2d 517, 518 (Ala.Civ.App.1995)). The parent seeking the modification bears the burden of proof. Cunningham v. Cunningham, 641 So.2d-807, 809 (Ala.Civ.App.1994).
“ Whether circumstances justifying, modification of support exist is a matter within the trial court’s discretion. [Cunningham v. Cunningham, 641 So.2d 807 (Ala.Civ.App.1994).] We will not disturb the trial court’s decision on appeal unless there is a showing that the trial court abused that discretion or that the judgment is plainly and palpably wrong. Id.; Douglass v. Douglass, 669 So.2d 928, 930 (Ala.Civ.App.1995).’
“Romano v. Romano, 703 So.2d 374, 375 (Ala.Civ.App.1997).”
Milligan v. Milligan, 149 So.3d 623, 626 (Ala.Civ.App.2014).
The divorce judgment states, in pertinent part:
“The [father] shall be entitled to claim both children as dependents in accordance with applicable federal and state income tax laws and regulations commencing with the 2010 tax year.... The Court finds that it would be manifestly unjust for the [mother] to be allowed to claim the children as tax dependents because of her minimal income, the amount of child support to be paid by the [father], his obligation to' maintain medical insurance at his expense, his other financial obligations imposed in this Judgment for the benefit of the children and his obligations for paying *1088 the first and second mortgage debts on the parties’ jointly owned real estate.”
The father argues that “[t]he mortgage debt was only a small portion of the court’s stated reasons for its original assignment of tax dependency to the [father].” We disagree. The judgment in the present case, modifying the divorce judgment to allow the mother to claim the children as dependents on her income taxes, provides, in pertinent part:
“The evidence shows that there have been substantial and material changes in the circumstances of the parties and their children since the Judgment of Divorce was entered. The Court granted [the father] the right to claim the parties! children as dependents for income tax purposes primarily because he was obligated to make the first and second mortgage payments on the former marital residence until it could be sold. He did not do so, the mortgages have been foreclosed, and both parties have filed bankruptcy. It no longer would be manifestly unjust for [the mother] to be allowed to claim the parties’ children for income tax purposes as is contemplated by the Rule 32 guidelines.”
Thus, the trial court indicated that the mortgage debt was, indeed, the primary reason for its assignment of tax dependency to the father. The father admitted that the mortgages on the marital home had been foreclosed and stated that approximately $154,000 had been owed on the home. Because we agree with the trial court that that amount is a significant obligation that the father failed to meet, the trial court was free to determine that a substantial change had occurred since the entry of the divorce judgment.
The father further argues that there was no evidence presented that assigning the tax dependency of the children to the mother would benefit the children. We agree with the mother, however, that because the mother is the primary caregiver the trial court could have inferred that the mother’s right to claim the children as dependents would directly benefit the children. We therefore affirm the trial court’s judgment with regard to its order that the mother may claim the children as dependents on her tax returns.
Based on the preceding discussion, we reverse the trial court’s judgment insofar as it found the father in contempt for his refusal to allow Lizzie to attend a church event during one of his visits, and we remand the case to the trial court for the entry of a judgnent consistent with this opinion. We affirm the trial court’s judgment as to the remaining issues raised on appeal.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
THOMPSON, P.J., and THOMAS, MOORE, and DONALDSON, JJ., concur.