MURDOCK, Judge.
This is an appeal by the former wife from a judgment reducing the former husband’s child-support obligation from $2,500 per month to $1,500 per month.
The parties were divorced in 1993. The divorce judgment incorporated an agreement entered between the parties concerning the custody of the parties’ two minor children, child support, medical and dental expenses of the minor children, and other issues relating to the divorce. According to the CS^41 “Child Support Obligation Income Statemeni/Affidavit” forms submitted at the time of the divorce, the former husband’s income was over $10,000 per month, and the former wife’s income was approximately $4,000 per month. Pursuant to the agreement and the divorce judgment, the former husband was required to pay $2,500 per month in child support, to keep a $225,000 life-insurance policy in force for the benefit of the children, to maintain health-insurance coverage for the children, and to pay for “all extraordinary medical and extraordinary dental expenses” of the children.
In September 2000, the former husband petitioned to modify his child-support obligation on the ground that his income had substantially decreased and the former wife’s income had substantially increased.
Following ore tenus proceedings, the trial court entered a judgment that, among other things, reduced the former husband’s child-support obligation to $1,500 per month.
The former wife appeals.
“Where a trial court receives ore ten-us evidence, its judgment based on that evidence is entitled to a presumption of correctness on appeal and will not be reversed absent a showing that the trial court abused its discretion or that the judgment is so unsupported by the evidence as to be plainly and palpably wrong. Scholl v. Parsons, 655 So.2d 1060 (Ala.Civ.App.1995). This ‘presumption of correctness is based in part on the trial court’s unique ability to observe the parties and the witnesses and to evaluate their credibility and demean- or.’ Littleton v. Littleton, 741 So.2d 1083, 1085 (Ala.Civ.App.1999). In addition, when the trial court’s judgment does not make specific findings of fact, this court must assume that the trial court made those findings of fact necessary to support its judgment. Ex parte Bryowsky, 676 So.2d 1322 (Ala.1996). This court is not permitted to reweigh the evidence on appeal and substitute its judgment for that of the trial court. Somers v. McCoy, 777 So.2d 141 (Ala.Civ.App.2000).”
*912 Amaro v. Amaro, 843 So.2d 787, 790-91 (Ala.Civ.App.2002).
The former wife contends that the trial court erred by reducing the former husband’s child-support obligation. She argues that although the value of the former husband’s investments has decreased, he is still living off the principal of those investments and that the change in the parties’ respective incomes therefore does not justify a reduction in the former husband’s child-support obligation.
The record reveals the following facts. The former wife testified that at the time of the trial in this matter she was employed with Naborhood Realty and Development, Inc. She testified that, during the parties’ marriage, she had been employed as a certified public accountant and had owned her own accounting practice but that, because she was working a lot of hours, the former husband had wanted her to sell or close the accounting practice. The former wife testified that Paul Na-bors, who at the time was the former husband’s business partner in First Coastal Building Supply (a wholesale vinyl-siding business), had approached her and asked her if she would be interested in forming a real estate business with him. She testified that the former husband and Nabors, who was a real estate broker, were at the time the parties were married partners in a real estate company and that when she sold her accounting practice she had approached the former husband about his signing over his interest in the real estate partnership to her, which he subsequently did. When the former husband signed over his interest in the real estate partnership to the former wife, the partnership had only two properties. The former wife testified that she took the money she received from the sale of her accounting practice, and the properties from the partnership, and she and Nabors formed Naborhood Realty and Development, Inc., which they incorporated in 1989. The former wife testified that she purchased Na-bors’s shares in Naborhood Realty in 1998 for approximately $1,250,000 and that Na-bors had financed the purchase for her. She testified that she is the sole shareholder and the only employee of the business. The former wife also testified that in the three or four years before the trial she had paid Nabors more than $900,000 of the $1,250,000, thereby reducing the amount she owed Nabors for his share of the business to between $300,000 and $350,000.
When questioned regarding her 1999 federal income-tax form, the former wife testified that she paid taxes on $360,355 in income in 1999. She also testified that her 2000 federal income-tax form indicates that she had income of approximately $240,000 for that year but that she had received an extension for filing her 2001 tax return and that she anticipated her income for 2001 to be considerably less than her income was in 1999 and 2000.
The former wife also testified that at the time of the parties’ divorce in 1993 the former husband was part owner of First Coastal Building Supply and was working at that company. She testified that he was earning a salary of approximately $90,000 per year, as well as drawing a monthly bonus of $10,000 per month. She testified that, at the time of the divorce, she was earning less than $50,000 per year. When questioned about the child-support guideline forms filed by the parties in the original divorce proceedings, she testified that the forms indicated that her income was “Monthly gross four thousand” and that the former husband’s income was “Ten thousand plus” per month.
The former wife also testified that the parties’ children attend private school, that one or both of the children had been attending private school for the past 9 or 10 *913 years, and that she had been paying the childrens’ private-school expenses. She testified that both children had attended St. Paul School until the year before trial but that the older child now attends Cottage Hill Christian Academy and the younger child attends Cottage Hill Baptist School. She testified that the private-school tuition for both children at St. Paul had been between $8,000 and $10,000 per year.
The former husband testified that when he and Nabors sold First Coastal Building Supply he received approximately $2,400,000 for his 48% share of the business. He testified that he paid taxes on the proceeds from the sale of the business and that “after it was all said and done,” he ended up with about $1,800,000. The former husband also testified that he had invested some of that money in mutual funds, had put some of that money in annuities, and had paid off some loans and “things like that” with some of that money. He also testified that he had continued to work for the company for three years following the sale, earning a salary of $150,000 per year, but that he had not worked since October 1998.
The former husband testified that he had health problems, including a disorder that causes him to have seizures, from which he has suffered since he was 26 years old. The former husband testified that he was employable but that “stress-wise it’s difficult for [him].” He testified that “when the stress level increases, it increases [his] blood pressure and increases the seizures.” He also testified that he takes the prescription medicines Tegretol and Prozac. Nonetheless, the former husband also testified at trial that he could work if he wanted to.
The former husband testified that his taxable income for 2001 was $40,085. When questioned by the former wife’s counsel about his 2001 income-tax return, the former husband testified that in 2001 he had deducted $42,000 for home-mortgage interest and that his total interest deduction had been $46,267. When questioned about his income, the former husband testified that he had to sell certain securities in 2001 “to live” and that he had realized losses on several of the investments that were reflected on his 2001 income-tax return. The former husband also testified that a $372,000 annuity he had testified about in his deposition had decreased in value.
The former husband also testified that he has a First Priority Management account that has a balance of $69,000; a certificate of deposit in the amount of $75,000; $1,100,000 in a mutual fund; and a $340,000 annuity that had been transferred from another annuity (it appears that this is the same annuity that he testified in his deposition was worth $372,000). The former husband also testified that he owns a rental house in Mobile that is valued at $180,000; he testified that he rents the house for $1,500 per month and that his net profit is $1,100 each month from that amount. The former husband also testified that he has a monthly household budget of $15,103.
The former husband testified that his present wife is not employed. He testified that he and his present wife had recently built a 6,000-square-foot house in Daphne, Alabama, that sits of five acres of land and has a five-car garage. He also testified that the house is still “on a construction loan of [$625,000].” He testified that he had not financed the five acres that the house sits on; he paid $75,000 for the five acres.
The former husband also testified that he has a 1998 BMW automobile, for which he paid $50,000 cash. He also testified that he owns a 2001 Lincoln Navigator *914 sport-utility vehicle, which he purchased for $48,000. The former husband testified that in purchasing the Navigator, he traded in a 1999 Jeep vehicle, for which he had paid $38,000 cash, and that he financed the remainder of the purchase price of the Navigator; his monthly payment for the Navigator is $716. The former husband also testified that he is on the title, along with his stepson, of a 1999 Mustang Cobra automobile. The former husband testified that his stepson sold a truck for approximately $11,000; that the stepson gave the $11,000 to the former husband, which the former husband put in the bank; and that the former husband then paid $28,000 cash to purchase the Mustang for the stepson. The former husband admitted that after purchasing the Mustang he had then sent the vehicle to California to have a special set of wheels and hubcaps put on it.
The parties’ combined monthly adjusted gross incomes exceed the uppermost level of the “Schedule of Basic Child Support Obligations” attached as an appendix to Rule 32, Ala. R. Jud. Admin.; therefore, the trial court was entitled to use its discretion in determining whether to modify the former husband’s child-support obligation and, if modifying the amount, in setting the former husband’s future obligation. See Rule 32(C)(1), Ala. R. Jud. Admin.; see also B.R.L. v. State ex rel. K.H.S., 664 So.2d 908, 913 (Ala.Civ.App.1995); Anonymous v. Anonymous, 617 So.2d 694 (Ala.Civ.App.1993). This court has stated that a trial court’s discretion in determining child support in cases that fall outside the Rule 32 schedule is not unbridled and that the amount of support awarded must be related to the reasonable and necessary needs of the children. St. John v. St. John, 628 So.2d 883 (Ala.Civ.App.1993). There is no evidence or allegation in this case that the financial needs of the children were not being met under the 1993 divorce judgment, or that they will not be met as a result of the trial court’s reducing the former husband’s child-support obligation to $1,500 per month.
Although the former husband’s income appears to have decreased as a result of the fluctuations of the stock market, it is obvious that, if ordered to do so, he could continue to pay $2,500 per month in child support (if necessary, by liquidating assets). Nonetheless, the former wife’s income has substantially increased since the divorce, averaging approximately $300,000 per year in 1999 and 2000. Additionally, other than the testimony regarding the cost of the children’s private-school tuition, there was no evidence presented by either party regarding the present needs of the children. Based on the record before us, we conclude that the trial court did not abuse its discretion in reducing the former husband’s child-support obligation to $1,500 per month.
Much of the testimony and evidence that both parties presented to the trial court was intended solely to show how “well off’ the other party was. The trial court apparently concluded, quite reasonably, that both parties were more than able to provide for the financial needs of the children and that the parties were contesting merely the division of those costs.
The trial court’s judgment is due to be affirmed.
Both parties’ requests for the award of attorney fees on appeal are denied.
AFFIRMED.
CRAWLEY and PITTMAN, JJ„ concur.
YATES, P.J., dissents, with writing, which THOMPSON, J., joins.