*887
 
 THOMPSON, Presiding Judge.
 

 Joseph M. Bridges (“the husband”) appeals from a judgment finding him in contempt for his failure to comply with certain provisions of the 2005 judgment divorcing him from Renee Lynn Bridges (“the wife”). In addition to finding the husband in contempt, the trial court modified provisions of the 2005 divorce judgment.
 

 The record indicates the following. The 2005 divorce judgment (“the 2005 judgment”) incorporated an agreement the parties had reached that settled all the issues in the case. The provisions of the judgment that are relevant to this appeal read as follows:
 

 “9. LIFE INSURANCE:
 
 The Husband shall maintain through his employer a life insurance policy in an amount not less than $500,000 with the Wife named as the beneficiary thereon for so long as Husband is obligated to pay periodic alimony to the Wife as set out herein. The Husband shall pay all premiums on said policy and shall not cancel or allow said insurance to lapse. The Husband shall not mortgage, pledge, or encumber said insurance. The Husband shall furnish proof of said insurance to the Wife each year on the anniversary of this Consent Decree.
 

 [[Image here]]
 

 “11. FREQUENT FLIER MILES/DISCOUNT POINTS:
 
 Husband shall transfer to the Wife 50% of his existing frequent flyer/discount mileage points with the airlines; and 50% of his hotel discount points/bonus points. In the future, Husband shall convey to Wife 25% of all new frequent flyer/dis-count mileage points and hotel discount points/bonus points earned or accrued by Husband during the prior year. Commencing March 1, 2006, and continuing on March 1st each year thereafter, Husband shall provide to the Wife a photocopy of each and every account evidencing his accumulated frequent flyer/discount mileage points and his hotel discount points/bonus points. Husband shall execute whatever documents are necessary or required to allow Wife to use her 25% of each year’s accumulated points.
 

 [[Image here]]
 

 “18. ALIMONY:
 
 .... As additional periodic alimony, the Husband shall pay the sum of 25% of the gross sum of bonuses and commissions received by Husband under his employer’s Neptune Technology Group, Inc.’s ‘Management Incentive Plan’ (as defined by Husband’s employer for all covered management and staff); however, the same shall exclude Husband’s salary, stock, stock options or any other form of non-cash compensation received by Husband from Neptune Technology Group, Inc.”
 

 In June 2008, the wife filed a petition for a rule nisi alleging, among other things, that the husband had failed to abide by the life-insurance, frequent-flier-mileage/hotel-discount, and periodic-alimony provisions of the 2005 judgment. The husband denied most of the wife’s allegations; however, he acknowledged that he owed the wife $3,000 in monthly periodic alimony, contending that he had been financially unable to pay it. The husband submitted documents that he said indicated that he had complied with the life-insurance and frequent-flier-mileage/hotel-discount provisions of the 2005 judgment. He also asserted that he had left his job with Neptune Technology Group, Inc. (“Neptune”) shortly after the parties divorced and that, therefore, he was under no obligation to pay the wife a 25% share of any bonuses he might receive. After a number of continuances, the trial court held a hearing on the matter on November 10, 2009. The husband lived out of the country, and he waived his presence at the
 
 *888
 
 trial; however, he was represented by-counsel.
 

 The evidence was undisputed that the husband no longer worked for Neptune. At the trial, the wife refuted the husband’s assertion that, because he was no longer employed by Neptune, he was under no obligation to pay her any portion of bonuses he might receive from any other employer. The wife testified that, in entering into the agreement that was incorporated into the 2005 judgment, the parties intended that she would receive 25% of any bonuses paid to the husband, regardless, of who his employer was at the time. Neither party presented any evidence regarding the amount of money, if any, the husband had received in the form of bonuses since leaving his employment with Neptune.
 

 The wife testified that when the husband provided her with proof that he had life insurance, the information she received from him did not indicate the beneficiary. She also testified that, since July 2008, she had not received proof that the husband had maintained a life-insurance policy naming her as the beneficiary.
 

 The wife also testified that the husband had not deposited any frequent-flier points into her account since 2007, and, she said, he had never provided her with hotel-discount points. She asserted that the husband had not provided her with any documentation as to the frequent-flier points he had accumulated after 2007. The husband provided a document indicating that he had transferred frequent-flier points to the wife’s account in February 2008. However, there was no evidence in the record indicating that the husband had provided the wife with any points or proof of the number of frequent-flier points or hotel-discount points he had accumulated after February 2008.
 

 After the trial, the trial court entered a judgment finding, among other things, that the husband was in contempt for failing to provide proof of an insurance policy naming the wife as the beneficiary, for failing to provide proof to the wife of the total amount of frequent-flier and hotel-discount points earned, and for failing to provide to the wife proof of any bonuses he had been paid for the three years preceding the entry of the judgment.
 

 The trial court ordered the husband to provide the wife with proof that he had a $500,000 life-insurance policy naming the wife as a beneficiary and to continue to provide proof of the policy annually. The trial court further ordered the words “through his employer” in the first sentence of the life-insurance provision of the 2005 judgment — paragraph 9 — to be stricken. The trial court also ordered the husband to pay 25% of the gross sum of any bonuses or commissions he had received from his employer during the three years preceding the entry of the judgment. As to the periodic-alimony provision of the 2005 judgment — paragraph 18 — the trial court ordered the language “under his employer’s Neptune Technology Group, Inc.’s ‘Management Incentive Plan’ (as defined by Husband’s employer for all covered management and staff)” and “from Neptune Technology Group, Inc.,” to be stricken. The husband also was ordered to provide the wife with 25% of the frequent-flier and hotel-discount points he had earned in the three years preceding the entry of the judgment. The husband appeals.
 

 The husband argues that the trial court abused its discretion by finding him in contempt for his alleged failure to comply with requirements that were not included in the 2005 judgment. This court’s standard of review in contempt cases is well settled.
 

 “The issue whether to hold a party in contempt is solely within the discretion
 
 *889
 
 of the trial court, and a trial court’s contempt determination will not be reversed on appeal absent a showing that the trial court acted outside its discretion or that its judgment is not supported by the evidence.
 
 Brown v. Brown,
 
 960 So.2d 712, 716 (Ala.Civ.App. 2006) (affirming a trial court’s decision not to hold a parent in contempt for failure to pay child support when the parent testified that he had deducted from his monthly child-support payment the amount he had expended to buy clothes for the children).”
 

 Poh v. Poh,
 
 64 So.Sd 49, 61 (Ala.Civ.App. 2010).
 

 “Rule 70A, Ala. R. Civ. P., has governed contempt proceedings in civil actions since July 11, 1994. Rule 70A(a)(2)(D) defines ‘civil contempt’ as a ‘willful, continuing failure or refusal of any person to comply with a court’s lawful writ, subpoena, process, order, rule, or command that by its nature is still capable of being complied with.’ ”
 

 Stamm v. Stamm,
 
 922 So.2d 920, 924 (Ala. Civ.App.2004). To hold a party in contempt under either Rule 70A(a)(2)(C)(ii) (criminal contempt) or (D)(civil contempt), Ala. R. Civ. P., the trial court must find that the party willfully failed or refused to comply with a court order.
 
 T.L.D. v. C.G.,
 
 849 So.2d 200, 205 (Ala.Civ.App.2002).
 

 Specifically, the husband contends that the 2005 judgment did not require him to maintain a life-insurance policy naming the wife as his beneficiary unless his employer offered the insurance. The husband also contends that, pursuant to the 2005 judgment, he was not required to pay the wife a 25% share of any bonus he received from any entity other than Neptune.
 

 In analyzing whether the trial court abused its discretion in finding the husband in contempt in this case, we look first to the language included in the 2005 judgment.
 

 “In
 
 R.G. v. G.G.,
 
 771 So.2d 490 (Ala.Civ. App.2000), this court stated:
 

 “ ‘ “[A] settlement agreement which is incorporated into a divorce decree is in the nature of a contract.”
 
 Smith v. Smith,
 
 568 So.2d 838, 889 (Ala.Civ. App.1990). A divorce judgment should be interpreted or construed as other written instruments are interpreted or construed.
 
 Sartin v. Sartin,
 
 678 So.2d 1181 (Ala.Civ.App.1996). “The words of the agreement are to be given their ordinary meaning, and the intentions of the parties are to be derived from them.”
 
 Id.
 
 at 1183. Whether an agreement is ambiguous is a question of law for the trial court.
 
 Wimpee v. Wimpee,
 
 641 So.2d 287 (Ala.Civ.App.1994). An agreement that by its terms is plain and free from ambiguity must be enforced as written.
 
 Jones v. Jones,
 
 722 So.2d 768 (Ala.Civ.App.1998). An ambiguity exists if the agreement is susceptible to more than one meaning.
 
 Vainrib v. Downey,
 
 565 So.2d 647 (Ala.Civ. App.1990). However, if only one reasonable meaning clearly emerges, then the agreement is unambiguous.
 
 Id.
 
 Finally, if a provision of an agreement is certain and clear, it is the duty of the trial court to determine its meaning, and the court’s determination is afforded a heavy presumption of correctness and will not be disturbed unless it is clearly erroneous.
 

 m:
 

 “771 So.2d at 494.
 
 See also Ex parte Littlepage,
 
 796 So.2d 298, 301 (Ala.2001);
 
 Van Allen v. Van Allen,
 
 812 So.2d 1276, 1277 (Ala.Civ.App.2001); and
 
 Granger v. Granger,
 
 804 So.2d 217, 219 (Ala.Civ.App.2001).
 

 “Alabama appellate courts have stated that a court will not look beyond the four corners of a written instrument unless the instrument contains latent ambi
 
 *890
 
 guities.
 
 E.g., Martin v. First Nat’l Bank of Mobile,
 
 412 So.2d 250, 253 (Ala. 1982). ‘[A] latent ambiguity is one that “appear[s] only as the result of extrinsic or collateral evidence showing that a word, thought to have but one meaning, actually has two or more meanings.” ’
 
 [Meyer v.] Meyer,
 
 952 So.2d [384] at 392 [ (Ala.Civ.App.2006) ] (citing 11 Richard A. Lord,
 
 Williston on Contracts
 
 § 33:40, at 816 (4th ed.2003)).”
 

 Judge v. Judge,
 
 14 So.3d 162, 165-66 (Ala. Civ.App.2009). Moreover, “[i]f the terms of a judgment are not ambiguous, then they must be given their usual and ordinary meaning and their ‘legal effect must be declared in the light of the literal meaning of the language used’ in the judgment.”
 
 State Pers. Bd. v. Akers,
 
 797 So.2d 422, 424 (Ala.2000) (quoting
 
 Wise v. Watson,
 
 286 Ala. 22, 27, 236 So.2d 681, 686 (1970)).
 

 Here, the husband asserts that the plain language of the 2005 judgment does not obligate him to maintain a life-insurance policy for the benefit of the wife if he cannot obtain life insurance through his employer. The 2005 judgment states that the parties had reached an agreement as to all issues, and the trial court “adopt[ed] and merge[d]” that agreement into the 2005 judgment. Therefore, the 2005 judgment is in the nature of a contract, and we will construe it as we would any other document. The provision in paragraph 9 of the 2005 judgment regarding life insurance requires the husband to “maintain through his employer” a life-insurance policy with the wife as the named beneficiary. Giving the plain language of the phrase “maintain through his employer” its ordinary meaning, as we are required to do, we must agree with the husband that, under the 2005 judgment, he is not obligated to obtain a life-insurance policy for the benefit of the wife if the policy is not offered through his employer.
 

 The next step in our analysis is to determine whether the husband complied with the terms of the 2005 judgment. Paragraph 9, regarding providing life insurance to the wife, provides that the husband “shall furnish proof of [life] insurance to the Wife each year on the anniversary date of this [judgment].” The husband argues that the wife had the burden to demonstrate that he had life insurance available to him through an employer after he left Neptune and that the wife had failed to meet that burden.
 

 In
 
 J.K.L.B. Farms, LLC v. Phillips,
 
 975 So.2d 1001 (Ala.Civ.App.2007), the Phillips-es filed a petition for a rule nisi alleging that J.K.L.B. Farms had failed to comply with the terms of a July 8, 2003, judgment the trial court had entered against J.K.L.B. Farms.
 

 “J.K.L.B. argued before the trial court that it has complied with the July 8, 2003, judgment to the extent to which it has the authority to do so. Thus, it asserted before the trial court its defense that it was unable to comply with the July 8, 2003, judgment.
 
 Stamm v. Stamm,
 
 922 So.2d 920, 924 (Ala.Civ.App. 2004) (‘[T]he inability to comply with the trial court’s judgment is a valid defense in contempt proceedings.’). The trial court, after hearing the arguments of counsel, rejected that defense. The burden is on the party accused of contempt to demonstrate its inability to comply with the trial court’s judgment; the burden shifts only after the accused party presents sufficient evidence of lack of ability to comply with the trial court’s judgment.
 
 Carr v. Broyles,
 
 652 So.2d 299, 301-02 (Ala.Civ.App.1994);
 
 Hitson v. Hitson,
 
 412 So.2d 798, 800 (Ala.Civ. App.1982).”
 

 J.K.L.B. Farms,
 
 975 So.2d at 1008.
 
 See also Falkner v. State ex rel. Falkner,
 
 769 So.2d 933, 935 (Ala.Civ.App.2000) (quoting
 
 *891
 

 Watts v. Watts,
 
 706 So.2d 749, 751 (Ala. Civ.App.1997)) (“ ‘The inability to pay child support or alimony is a defense to contempt. When the accused presents evidence that he is unable to pay the ordered amount, the burden of proof is on the complainant to prove beyond a reasonable doubt that he can comply.’ ”);
 
 Summers v. Summers,
 
 661 So.2d 243 (Ala.Civ.App.1995); and
 
 Morgan v. Morgan,
 
 582 So.2d 1147, 1149 (Ala.Civ.App.1991).
 

 In this case, the evidence was undisputed that the husband had not provided the wife with proof that he was maintaining a life-insurance policy for several years. The husband’s defense appears to be that he had not had the opportunity to obtain life insurance through an employer since leaving Neptune and, therefore, that he could not comply with paragraph 9. The holding in
 
 J.K.L.B. Farms,
 
 however, places the burden squarely on the husband as the party accused of contempt to prove his lack of ability to comply with the 2005 judgment. Our review of the record indicates that the husband presented no evidence on the issue whether he could obtain life insurance through his current employer. Accordingly, we conclude that the husband failed to meet his burden of showing his inability to comply with the 2005 judgment as to paragraph 9. Thus, the trial court’s determination that the husband was in contempt for failing to comply with the requirements of paragraph 9 is due to be affirmed.
 

 The husband makes a similar argument for his contention that the trial court abused its discretion by finding him in contempt for failing to comply with the provisions of the 2005 judgment regarding sharing frequent-flier and hotel-discount points with the wife. Specifically, he argues that the wife had the “affirmative burden” of proving that he had, in fact, accumulated any points after 2007.
 

 Paragraph 11 f the 2005 judgment provides that, “[cjommencing March 1, 2006, and continuing on March 1st each year thereafter, [the] Husband shall provide to the Wife a photocopy of each and every account evidencing his accumulated frequent flyer/discount mileage points and his hotel discount points/bonus points.” The husband also was ordered to transfer 25% of his annual accumulation of those points to the wife. The evidence was undisputed that the last time the husband had provided the wife with information regarding his frequent-flier and hotel-bonus points was in February 2008, when he provided her with documentation regarding the points he had accumulated in 2007.
 

 The husband’s defense as to this issue is that he had not earned any points since that time and that the wife had failed to show otherwise. As was the case with the life-insurance issue, however, the husband bore the burden of demonstrating that he had not earned any other points and, therefore, that he could not comply with the 2005 judgment.
 
 J.K.L.B. Farms,
 
 975 So.2d at 1008. The husband failed to produce any evidence indicating that he had not earned frequent-flier points or hotel-discount points; thus, he failed to meet his burden to demonstrate that he was unable to comply with the 2005 judgment. Thus, the trial court’s determination that the husband was in contempt for failing to comply with the requirements of paragraph 11 regarding frequenfiflier and hotel-discount points is also due to be affirmed.
 

 The husband contends that the trial court abused its discretion in finding that he was in contempt for failing to comply with paragraph 18 of the 2005 judgment because, he says, he was not obligated to provide the wife proof of any bonuses he may have earned once he left
 
 *892
 
 Neptune and was not required to pay the wife a portion of any such bonuses.
 

 Paragraph 18 requires the husband to pay the wife 25% of any bonus “received by Husband under his employer’s Neptune Technology Group, Inc.’s ‘Management Incentive Plan’ (as defined by Husband’s employer for all covered management and staff).” As was the case with the life-insurance provision of the 2005 judgment, the language used in paragraph 18 regarding the source from which the husband must pay the wife additional periodic alimony is clear and unambiguous. The literal meaning of that language requires that the husband’s obligation to provide the wife with information regarding bonuses he receives is limited to his employment with Neptune. Furthermore, because the language in paragraph 18 regarding the source of the bonuses the husband is required to share with the wife as periodic alimony is clear and unambiguous, any consideration the trial court may have given to the wife’s testimony regarding what she said were the parties’ intentions in reaching the agreement incorporated into the 2005 judgment was improper.
 

 The wife acknowledged that the husband no longer worked for Neptune. Under the plain and ordinary meaning of the 2005 judgment, the husband was not required to pay the wife a portion of bonuses or commissions he may have earned from any other source. Thus, the husband did not fail to comply with the 2005 judgment by not providing the wife with proof of any bonuses he may have received after leaving his job with Neptune or for not paying her a portion of such bonuses, if any. Accordingly, the trial court abused its discretion in finding the husband in contempt for failing to comply with paragraph 18 of the 2005 judgment, and that portion of the trial court’s judgment is due to be reversed.
 

 The husband contends that the trial court did not have the authority to strike any language from the 2005 judgment, which had the effect of modifying the judgment, because, he says, the wife did not request a modification in her pleadings, and the issue of modification was not tried by the consent of the parties.
 

 Rule 15(b), Ala. R. Civ. P., states, in pertinent part:
 

 “When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be sub-served thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party’s action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence .... The Court is to be liberal in granting permission to amend when justice so requires.”
 

 Determining whether an issue has been tried by the express or implied consent of the parties within the meaning of Rule 15(b) is a matter that lies within the discretion of the trial court.
 
 Hathcock v. Hathcock,
 
 685 So.2d 736, 738 (Ala.Civ.App. 1996) (citing
 
 McCollum v. Reeves,
 
 521 So.2d 13 (Ala.1987)). The trial court’s determination as to whether an issue has
 
 *893
 
 been tried by consent will not be reversed on appeal absent an abuse of that discretion.
 
 Id.
 

 “ ‘ “ ‘[I]f Rule 15 is to be of any benefit to the bench, bar, and the public, the trial judges must be given discretion to allow or refuse amendments.... We state also that Rule 15 must be liberally construed by the trial judges.
 
 But, that liberality does not include a situation where the trial on the issues will be unduly delayed or the opposing party unduly prejudiced.’
 
 ” ’
 

 “Tounzen v. Southern United Fire Ins. Co.,
 
 701 So.2d 1148, 1150 (Ala.Civ.App.1997), quoting
 
 Hayes v. Payne,
 
 528 So.2d 333, 334 (Ala.1987), quoting in turn
 
 Stead v. Blue Cross-Blue Shield of Alabama,
 
 294 Ala. 3, 6, 310 So.2d 469, 471 (1975).”
 

 Advantage Sales of Alabama, Inc. v. Clemons,
 
 979 So.2d 114, 118 (Ala.Civ.App.2007).
 

 Our supreme court has recently addressed whether an issue had been tried by express of implied consent:
 

 “1 “Rule 15(b) is
 
 not permissive:
 
 it provides that issues tried by express or implied consent
 
 shall
 
 be treated as if raised in the pleadings.’”
 
 Ammons v. Tesker Mfg. Corp.,
 
 853 So.2d 210, 216 (Ala.2002) (quoting
 
 Hawk v. Bavarian Motor Works,
 
 342 So.2d 355, 358 (Ala. 1977) (emphasis added in Ammons)). See also Rule 54(c), Ala. R. Civ. P. (‘[EJvery final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party’s pleadings.’).
 

 “‘It is well settled law in Alabama that implied consent of the parties can be found when an opposing party fails to object to the introduction of evidence raising the disputed issue initially.’
 
 Ho-sca, O. Weaver & Sons, Inc. v. Towner,
 
 663 So.2d 892, 896 (Ala.1995). ‘If a party objects to the introduction of evidence at the trial on the ground that it is not within the issues framed by the pleadings, he
 
 must show
 
 that he would be
 
 actually prejudiced
 
 in maintaining his action or defense on the merits by the admission of the evidence.’
 
 Hawk,
 
 342 So.2d at 358 (emphasis added).
 

 “‘“[Wjhether pleadings are deemed to be amended in order to conform to the evidence presented is also a matter within the discretion of the trial court,” and a decision in that regard will not be disturbed on appeal absent an abuse of discretion.’
 
 International Rehab.
 
 As
 
 socs., Inc. v. Adams,
 
 613 So.2d 1207, 1214 (Ala.1992) (quoting
 
 McCollum v. Reeves,
 
 521 So.2d 13, 16-17 (Ala.1987)). ‘Failure to so amend “does not affect the result of the trial of these issues.” Therefore, any such “variance” cannot affect the result of this appeal.’
 
 Whitfield v. Burttram,
 
 471 So.2d 401, 405 (Ala.1985) (quoting Rule 15(b)).”
 

 Scrushy v. Tucker,
 
 70 So.3d 289, 314 (Ala. 2011).
 

 In this case, the wife’s petition for a rule nisi asked that the trial court hold the husband in contempt for failing to comply with certain provisions of the 2005 judgment; she did not seek a modification of those provisions. As to the issue whether the husband was in contempt for failing to maintain a life-insurance policy naming the wife as a beneficiary, the parties argued over whether the husband had an obligation to provide that insurance during periods of unemployment. They did not litigate the issue whether the provision should be modified.
 

 During the-wife’s testimony at trial regarding the language in paragraph 18 of the 2005 judgment that additional periodic alimony would be paid out of Neptune’s incentive plan, the wife’s attorney asked her whether she was asking the trial court
 
 *894
 
 “to disregard that language and interpret [it] to mean that [the husband] should pay any bonuses that he might receive from any employer.” The husband’s attorney objected as follows:
 

 “Judge, if they are attempting to amend their pleadings by the evidence, I object to it. It’s never been brought to our attention before. We have been here only on a contempt on the four issues set out, and if they are trying to amend their pleadings through the evidence we would object to that.”
 

 The trial court overruled the husband’s objection, saying, “That’s a legal argument that can [sic] disregard that — the language of the divorce, and I overrule that.” The trial court then went on to say that it recognized that the husband’s contention was that the husband’s obligations under the 2005 judgment were limited to the exact language of the 2005 judgment.
 

 When the trial court entered its judgment finding the husband in contempt, it also ordered stricken the words “through his employer” in the first sentence of the life-insurance provision — paragraph 9 of the 2005 judgment. It also ordered stricken the language in paragraph 18 that read “under his employer’s Neptune Technology Group, Inc.’s ‘Management Incentive Plan’ (as defined by Husband’s employer for all covered management and staff)” and “from Neptune Technology Group, Inc.”
 

 The husband filed a motion to alter, amend, or vacate the contempt judgment on the ground that the trial court had improperly modified the judgment by striking certain language in the 2005 judgment, thereby modifying the terms of that judgment. The trial court held a hearing on the issue. At the hearing, the husband argued that, in striking the language, the trial court had modified the 2005 judgment. However, the husband argued, the trial court had been asked only to interpret and enforce the terms of the 2005 judgment. The wife’s attorney acknowledged that, during the contempt trial, he had not sought a modification of the 2005 judgment. Instead, he said, the wife had asked the court to interpret the intent of the parties at the time they entered into their consent agreement, which was incorporated into the 2005 judgment. The wife argued that, in its contempt judgment, the trial court had merely interpreted the 2005 judgment and had not actually modified that judgment.
 

 We agree with the husband that, in striking certain language from the 2005 judgment, the trial court went beyond merely interpreting the 2005 judgment; it modified the judgment to the extent that it changed the husband’s obligations. When the trial court removed the words “through his employer” from the life-insurance provision, the provision then required the husband to “maintain a life insurance policy” for the benefit of the wife, broadening the source from which the husband was obligated to obtain that insurance. Likewise, when the trial court removed from the periodic-alimony provision the explicitly defined plan from which the husband was to pay the wife, the provision obligated the husband to pay the wife a share of any bonuses he received from whatever source rather than from only the Neptune incentive plan, as stated in the 2005 judgment. By striking certain language from provisions in the 2005 judgment, the trial court went beyond merely interpreting the 2005 judgment and actually changed — i.e., modified — the obligations of the husband. It is fundamentally unfair to hold a party in contempt for failing to do something he or she was not required to do in the judgment to be enforced.
 

 Based on the record before us, we conclude that the parties did not try the issue of modification of the 2005 judgment by express or implied consent and that, in
 
 *895
 
 the contempt judgment, the trial court did, in fact, modify certain provisions of the 2005 judgment. Because neither party sought a modification of the 2005 judgment, the trial court did not have the authority to modify that judgment.
 
 See State v. Cash,
 
 739 So.2d 521, 522 (Ala.Civ. App.1999) (“Because the father did not request a modification of his child-support obligation or a reduction of his arrearage, and because the State did not consent, pursuant to Rule 15(b), Ala. R. Civ. P., to the trial of these issues, we conclude that the trial court had no authority to modify the child-support order or to reduce the amount of the arrearage.”). Therefore, those portions of the 2009 contempt judgment ordering language in the 2005 judgment to be stricken are due to be reversed.
 

 For the reasons stated above, those portions of the judgment finding the husband in contempt for failing to comply with the life-insurance and frequent-flier/hotel-discount provisions of the 2005 judgment are affirmed. That portion of the judgment holding the husband in contempt for failing to provide the wife with information regarding bonuses he may have received after leaving Neptune and for failing to pay the wife a portion of those bonuses, if any, is reversed. The portions of the judgment ordering that certain language be stricken from the 2005 judgment are also reversed. This cause is remanded for the trial court to enter a judgment consistent with this opinion.
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
 

 PITTMAN, BRYAN, and THOMAS, JJ., concur.
 

 MOORE, J., concurs in the result, without writing.