Rel: June 26, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2025-2026

_____

## CL-2025-0221

_____

### Bridges Barkley Crawford

### v.

### Andrew Martin Crawford

### Appeal from Lauderdale Circuit Court
### (DR-15-900375.04)

On Application for Rehearing

BOWDEN, Judge.

The opinion issued by this court on February 6, 2026, is withdrawn, and the following is substituted therefor.

Bridges Barkley Crawford ("the former wife") appeals from a judgment of the Lauderdale Circuit Court that modified the child-support

and alimony obligations of Andrew Martin Crawford ("the former husband"). The former wife argues, among other things, that the circuit court exceeded its discretion because, she argues, the former husband failed to provide sufficient evidence demonstrating a material change in circumstances with respect to his alimony obligation and failed to provide sufficient evidence demonstrating a material change in circumstances that is substantial and continuing with respect to his child-support obligation. We agree, and we reverse the judgment of the circuit court.

<u>Procedural History</u>

The parties have two children, H.B.C. ("the youngest child"), whose date of birth is August 23, 2011, and B.C. ("the oldest child"), whose date of birth is March 22, 2004. On May 12, 2017, the circuit court issued a divorce decree ("the divorce judgment"). The divorce judgment adopted a settlement agreement between the parties that contains, among other things, provisions regarding alimony and child support.

The alimony provisions of the settlement agreement require the former husband to pay $1,667 in alimony monthly for 14 years or "until [the former wife's] death, cohabitation, or remarriage." They also require

the former husband to pay $4,800 in alimony yearly for 14 years.[1] Neither the divorce judgment nor the settlement agreement contain provisions indicating that either alimony obligation is contractual or should not have been merged with the divorce judgment.

The child-support provisions of the settlement agreement require the former husband to pay $1,433 per month "until <u>the children</u> have reached the age of majority."[2]  (Emphasis added.) The child-support

---

[1]The alimony provisions of the settlement agreement provide:

> "2. Alimony. The [former h]usband agrees to pay the [former w]ife $1,667.00 per month for 14 years or until her death, cohabitation or remarriage beginning the first of the month in the month following the real estate closing and continuing on the first day of each month thereafter. Until the alimony payments begin, the [former h]usband shall continue to pay the mortgage, utilities, insurance, cell phone and $600.00 per month to the [former w]ife for groceries and gas. The [former h]usband shall also pay to the [former w]ife as alimony $4,800.00 per year for fourteen (14) years on or before March 31 beginning in 2018. All alimony payments shall be paid to a special needs trust by direct deposit."

[2]The child-support provisions of the settlement agreement provide:

> "3. Child Support. The [former husband] shall pay $1,433.00 per month on the first day of each month beginning the month following the real estate closing and continue until the children have reached the age of majority. Said child support shall be paid by income withholding order."

provisions do not follow the guidelines of Rule 32, Ala. R. Jud. Admin.; however, the circuit court determined in the divorce judgment that the parties had reached "a fair agreement" regarding the payment of child support.

On January 7, 2021, the circuit court entered a judgment following a hearing. The January 7, 2021, judgment terminated the former husband's yearly alimony obligation but denied the former husband's request to reduce his monthly alimony obligation. A transcript of the hearing that preceded the January 7, 2021, judgment is not in the record on appeal.

On June 8, 2023, the former husband filed a petition to modify his child-support obligation and his alimony obligation. The former husband alleged that the former wife had passed the Alabama State Bar Examination and was employed as a lawyer. He also alleged that the oldest child had reached the age of majority. Based on those two allegations, the former husband requested that the circuit court reduce his alimony and child-support obligations.

The former wife filed an answer on July 10, 2023. In her answer, the former wife alleged, among other things, that she is not gainfully

4

employed as a lawyer. On March 20, 2024, the former wife filed a motion for leave to amend her answer, which was granted on March 21, 2024. In her amended answer, the former wife admitted that she was licensed to practice law in Alabama, but she also asserted that medical issues had caused recent complications that limited her ability to practice law. The former wife asserted that she had suffered the "loss" of her left kidney in the summer of 2023. The former wife also asserted that the youngest child has autism-spectrum disorder and attention-deficit/hyperactivity disorder. The former wife alleged that, due to those conditions, she will continue to incur extraordinary expenses related to the youngest child.

The circuit court held a hearing on August 29, 2024, and entered a final judgment on October 18, 2024. In the October 18, 2024, judgment, the circuit court reduced the former husband's child-support obligation to $1,302 effective November 1, 2024. The October 18, 2024, judgment also terminated the former husband's monthly alimony obligation.

On November 18, 2024, the former wife filed a postjudgment motion in which she requested that the circuit court alter, amend, or vacate its final judgment. Although the former wife requested a hearing on the postjudgment motion, the circuit court did not hold a hearing, and the

postjudgment motion was denied by operation of law on February 18, 2025.[3] The former wife timely appealed.

## Factual History

The following summarizes the evidence presented to the circuit court that is pertinent to the issues raised by the former wife on appeal.

I.    The former wife's disability

A March 28, 2024, letter from the Social Security Administration ("the SSA") indicates that the SSA determined the former wife to be disabled under its rules on June 16, 2010. The former husband also agreed that the former wife had received a SSA determination of disability before the parties divorced in 2017. It is undisputed that the former wife remains disabled under the rules of the SSA.

---

[3]Rule 59.1, Ala. R. Civ. P., provides that a postjudgment motion that is not ruled on by the court within 90 days is deemed denied at the expiration of the 90-day period. The 90th day following the former wife's filing of her postjudgment motion on November 18, 2024, was February 16, 2025, which was a Sunday, and Monday, February 17, 2025, was a holiday, see Rule 6, Ala. R. Civ. P. Therefore, the former wife's postjudgment motion was deemed denied on Tuesday, February 18, 2025. See First Alabama Bank v. McGowan, 758 So. 2d 1116 (Ala. Civ. App. 2000), and Richburg v. Cromwell, 428 So. 2d 621 (Ala. 1983); see also Williamson v. Fourth Ave. Supermarket, Inc., 12 So. 3d 1200, 1203-04 (Ala. 2009).

The former wife testified about the nature of her disability. She testified that she has ulcerative colitis and a perforated colon. She also testified that she has Crohn's disease and a fistula that "seems to get inflamed and if I stay up and sitting without reclining, it drains." She testified that, sometime after 2021, it was discovered that her left kidney had atrophied due to her Crohn's disease but that doctors had advised against removing the kidney due to the risk of infection. The former wife testified that she is taking the medication Remicade.

II.    The former wife's employment after January 7, 2021

The former wife testified that she graduated law school and passed the Alabama State Bar Examination in 2022. She testified that she is self-employed and had established a professional limited-liability company named "Bridges Jones Law, PLLC." The former wife denied working for a law firm other than Bridges Jones Law.

The former wife testified that she does not practice law "much" and has less than 10 active cases. She testified that she is not able to complete a "long" trial because, she testified, she cannot work a full day or sit up. The former wife testified that she does not work set hours and can work

7

only a few hours at a time. The former husband admitted that he had not asked the former wife about her law practice in any way.

The former wife provided bank statements from her operating account for Bridges Jones Law. According to the former wife, she does not pay herself a salary from the operating account, and, instead, any income that is received is maintained in the operating account because, she testified, "I don't break even." The former wife entered, without objection, the following summary of deposits made into the operating account for Bridges Jones Law:

"**Bridges Jones Law PLLC**

| "MONTH | TOTAL RECEIVED |
|--------|----------------|
| "June 2023 | $500 |
| "July 2023 | $0 |
| "August 2023 | $1,675 |
| "September 2023 | $500 |
| "October 2023 | $400 |
| "November 2023 | $0 |
| "December 2023 | $1,800 |
| "January 2024 | $1,311.42 |
| "February 2024 | $0" |

The former wife testified that she was not able to earn more than the income cap set by the SSA without losing part of her cash benefit and, significantly, her health insurance through Medicare. The former wife

8

testified that she had enrolled in "Ticket to Work," which, she testified, is a program that would allow her to earn at most $1,500 a month and still retain her Medicare health-insurance benefits. The circuit court asked the former wife why she would continue to operate a law firm if it was not earning money; the former wife replied:

> "I would hope to be able to establish that is the whole purpose of going to the Ticket To Work. Can you work physically and if you can, can you earn? And I cannot go out and get a job and tell somebody, sure, I can work for you forty hours a week or the hours that somebody would ask for a new associate attorney to work, and so the only option that I saw was to try to open an LLC on my own. Now I guess I could have accessed savings or something like that to fund a business but I didn't have any access to it."

### III. The former wife's living circumstances

The former husband testified that the former wife had been living with her parents at the time of the entry of the January 7, 2021, judgment. He testified that the former wife had subsequently moved to Hoover to live with her parents and the youngest child in December 2022. The former husband admitted an exhibit indicating that the Hoover property is in a revocable trust in the name of the former wife's parents. The former wife testified that her parents live at a different address than her current residence.

IV. <u>The former wife's and the former husband's income and expenses</u>

The former wife completed a Form CS-41 Child Support Obligation Income Statement/Affidavit form ("Form CS-41") in April 2017. That Form CS-41 indicates that the former wife's total monthly gross income was $747 in 2017. A Form CS-42 Child-Support Guidelines form ("Form CS-42"), which the parties submitted in connection with the hearing that preceded the January 7, 2021, judgment lists the former wife's monthly gross income as $790.50. On August 29, 2024, the former wife filed a Form CS-41. That Form CS-41 indicated that her monthly gross income was $966.80 in 2024 and consisted entirely of benefits from the SSA. The former wife also testified that her August 29, 2024, Form CS-41 reflects her monthly income. The former husband testified that he had "no idea" about the former wife's current income other than the information in the letter from the SSA.

The former wife testified about her current expenses. She testified that her parents have been assisting with her expenses "since during the divorce," and, the former wife testified, her parents have continued to assist her by paying expenses for her.

The former husband also completed a Form CS-41 in April 2017. According to the former husband's April 2017 Form CS-41, the former husband's gross monthly income was $13,892 in 2017, which the former husband testified to at trial. A Form CS-42 dated November 20, 2020, lists the former husband's monthly gross income as $10,416. And a Form CS-42, prepared by the former husband's attorney and dated August 29, 2024, lists the former husband's monthly gross income as $12,698. The former husband also testified that his current average gross monthly wage is $12,697.62.

The former husband testified about his expenses. He did not, however, testify that his expenses had increased since 2017 or 2021. He also did not testify that he was no longer able to afford paying the full amount of his alimony obligation.

V.    The former husband's request to modify his child-support obligation

The former husband testified that he was requesting a change to the child-support obligation because the oldest child had reached the age of majority. When questioned by his attorney, the former husband

11

clarified that the oldest child's reaching the age of majority was the only reason for his seeking to modify his child-support obligation:

"Q. Now other than [the oldest child] becoming an adult and turning nineteen, what is the other significant change that has occurred that you decided you might want to revisit child support?

"A. Well, I mean, just that one of them is now an adult."

Analysis

I.      Whether the circuit court has jurisdiction to modify the alimony and child-support obligations

The former wife argues that the circuit court erred because, she says, the former husband failed to plead grounds "to invoke the jurisdiction of the [circuit] court to modify the property, rights, duties, agreement or [divorce judgment]." The former wife's brief at 41. The former wife asserts that a settlement agreement between parties to a divorce judgment is binding and that such agreements "'will not be set aside' except for fraud, collusion, accident, surprise or some other ground of this nature.'" The former wife's brief at 40 (quoting Holder v. Holder, 86 So. 3d 1001, 1002 (Ala. Civ. App. 2011)). She reasons that, because the former husband did not plead grounds indicating fraud, collusion,

accident, or surprise, the circuit court lacked jurisdiction to modify the alimony and child-support obligations established by the settlement agreement.

A circuit court has jurisdiction to modify a periodic-alimony obligation or a child-support obligation if the obligation is merged into a divorce judgment. Ex parte Billeck, 777 So. 2d 105, 107 (Ala. 2000) ("A trial court may modify an obligation of periodic alimony if changed circumstances of the parties justify such a modification; and, in doing so, the trial court does not void the agreement of the parties because the merger of the agreement into the final divorce judgment has already eliminated its contractual nature."); Ala. Code 1975, § 30-2-57(h) ("An order awarding rehabilitative or periodic alimony may be modified based upon application and a showing of material change in circumstances."); Egres v. Egres, 85 So. 3d 1026, 1030 (Ala. Civ. App. 2011)("'[A]n agreement between parents fixing child support becomes merged into the divorce decree and thereby loses its contractual nature ….'"(citation omitted)); Rule 32(A)(3)(e), Ala. R. Jud. Admin. ("A trial court has discretion and authority to modify a child-support obligation even when there is not a ten percent (10%) variation between the current obligation

13

and the guidelines when a petitioner has proven a material change in circumstances that is substantial and continuing.").

The evidence indicates that the settlement agreement was merged into the divorce judgment. Furthermore, there is no indication that the alimony provisions were contractual or represented an integrated bargain. See <u>Harrison v. Harrison</u>, 514 So. 2d 1026 (Ala. Civ. App. 1986)(holding periodic-alimony obligation was not modifiable because the parties specified in their settlement agreement that the periodic-alimony obligation was to remain contractual and, expressly, was not to be merged into the divorce judgment). Accordingly, the former wife's argument that the circuit court lacked jurisdiction to modify the alimony and child-support provisions of the settlement agreement is without merit.

II.     <u>Whether the circuit court erred by modifying the child-support award</u>

"A child-support award may be modified only upon a showing that there is a material change in circumstances that is substantial and continuing. <u>Browning v. Browning</u>, 626 So. 2d 649, 650 (Ala. Civ. App. 1993). '"The standard for determining changed circumstances is the increased needs of the child and the ability of the parent to respond to those needs.'"' <u>Jones v. Jones</u>, 101 So. 3d 798, 803 (Ala. Civ. App.

14

2012) (quoting <u>Allen v. Allen</u>, 966 So. 2d 929, 932 (Ala. Civ. App. 2007), quoting in turn <u>Coleman v. Coleman</u>, 648 So. 2d 605, 606 (Ala. Civ. App. 1994)). In child-support-modification cases that fall outside of the Rule 32[, Ala. R. Jud. Admin.,] guidelines, this court has stated that the trial court's discretion is not unbridled and that 'the amount of support awarded must be related to the reasonable and necessary needs of the children.' <u>Grimsley v. Grimsley</u>, 887 So. 2d 910, 914 (Ala. Civ. App. 2004). While 'a modification is particularly disfavored in the case of a [judgment] based on an agreement between the parties when … a time ... separates the [judgment] and the hearing for modification,' the trial court is not strictly bound by that agreement. <u>Tucker v. Tucker</u>, 588 So. 2d 495, 497 (Ala. Civ. App. 1991); <u>Love v. Love</u>, 623 So. 2d 315, 317 (Ala. Civ. App. 1993). However, when a divorce judgment establishing the amount of child support is based on an agreement between the parties, the judgment 'should not be modified except for clear and sufficient reasons and after thorough consideration and investigation.' <u>Tucker</u>, 588 So. 2d at 497."

<u>Triggs v. Triggs</u>, 417 So. 3d 201, 204 (Ala. Civ. App. 2024).

The former husband petitioned to modify his child-support obligation based on the oldest child's reaching the age of majority. The former wife argues, however, that the settlement agreement anticipated that the former husband would pay $1,433 in child support even after the oldest child reached the age of majority; therefore, the former wife argues, the fact that the oldest child reached the age of majority was not a material change in circumstances that is substantial and continuing.

15

"'"'"[A] settlement agreement which is incorporated into a divorce decree is in the nature of a contract." <u>Smith v. Smith</u>, 568 So. 2d 838, 839 (Ala. Civ. App. 1990). A divorce judgment should be interpreted or construed as other written instruments are interpreted or construed. <u>Sartin v. Sartin</u>, 678 So. 2d 1181 (Ala. Civ. App. 1996). "The words of the agreement are to be given their ordinary meaning, and the intentions of the parties are to be derived from them." <u>Id.</u> at 1183. ... An agreement that by its terms is plain and free from ambiguity must be enforced as written. <u>Jones v. Jones</u>, 722 So. 2d 768 (Ala. Civ. App. 1998). An ambiguity exists if the agreement is susceptible to more than one meaning. <u>Vainrib v. Downey</u>, 565 So. 2d 647 (Ala. Civ. App. 1990). However, if only one reasonable meaning clearly emerges, then the agreement is unambiguous. <u>Id.</u>'"'

"<u>Bridges v. Bridges</u>, 69 So. 3d 885, 889 (Ala. Civ. App. 2011)."

<u>Ex parte Peake</u>, 357 So. 3d 1192, 1199 (Ala. Civ. App. 2021).

The child-support provisions in the settlement agreement are not susceptible to more than one meaning, and their intent is unambiguous. The child-support provisions set the amount of support (i.e., a nonapportioned, lump-sum payment of $1,433) and set the period that the former husband will be required to pay that amount (i.e., until the "children" reach the age of majority). The child-support provisions therefore necessarily anticipate that the period of the former husband's lump-sum child-support obligation would persist beyond the oldest

16

child's reaching the age of majority. If one child reaches the age of majority -- but the other child has not -- "the children" have not reached the age of majority. Cf. State ex rel. Harris v. Weaver, 55 So. 3d 1231, 1234 (Ala. Civ. App. 2010)(plurality opinion)("From the father's point of view, he was obligated to pay the same amount of child support for three children for a specified amount of time, i.e., until the youngest child reached the age of majority. It is understandable that he interpreted his obligation to the older children as continuing until the youngest child reached the age of majority."). Furthermore, the fact that the parties expressed an intent for the former husband to pay child support after the oldest child reached the age of majority does not render the child-support provisions of the settlement agreement unenforceable. "Under Alabama law, 'it has long been recognized that parties may agree between themselves to pay support beyond a child's minority, and ... such agreements are enforceable.'" Campbell v. Campbell, 827 So. 2d 111, 112 n.1 (Ala. Civ. App. 2002)(quoting Jackson v. Nelson, 686 So. 2d 338, 339 (Ala. Civ. App. 1996)).

Of course, the former husband may still petition for an order modifying his child-support obligation, even if one or none of his children

17

have reached the age of majority. Egres, 85 So. 3d at 1030. But the granting of that petition is not automatic. Instead, the former husband must prove that a material change in circumstances that is substantial and continuing has occurred. Rule 32(A)(3)(e); Reeves v. Reeves, 894 So. 2d 712, 714 (Ala. Civ. App. 2004)("[T]he general rule remains that a trial court may modify a child-support award 'upon proof of a material change of circumstances that is substantial and continuing.'" (quoting Romano v. Romano, 703 So. 2d 374, 375 (Ala. Civ. App. 1997))).

When determining whether there has been a material change in circumstances that is substantial and continuing, this court looks to the circumstances that existed at the time of the divorce judgment or subsequent judgments and compares them with the circumstances that exist at the time of the filing of the petition to modify the child-support obligation. See Reeves, 894 So. 2d at 714 (holding that there was no evidence to support increase of child-support obligation because the circumstances that existed at the time of the entry of the divorce judgment, and upon which the parties' agreement and the trial court's approval of that agreement were based, included the parties' incomes and the financial needs of the children and, this court determined, neither the

18

parties' incomes nor the children's financial needs had materially changed at the time of the filing of the child-support modification petition).

In this case, when the former husband agreed to pay child support until the "children" reached the age of majority, the circumstance of the age of the youngest child and the age of the oldest child was known to the former husband. Thus, when the former husband entered into the settlement agreement, he was aware of the amount of his child-support obligation, the period that he had agreed to pay child support, and that that period would extend beyond the oldest child's reaching the age of majority. The oldest child's finally reaching the age of majority therefore had no effect on the circumstances upon which the settlement agreement were based. See Reeves, supra.

Accordingly, under the facts of this case, in which the former husband agreed to pay a lump-sum child-support obligation until the "children" reached the age of majority, the lone circumstance of one of the parties' children reaching the age of majority is not a material change in circumstances that is substantial and continuing but, rather, is an event anticipated by the parties' contractual agreement. As the former wife

19

points out, "the [former husband] cannot agree to post[minority] child support and then submit evidence that the child has reached the age of majority in an effort to show a material change." The former wife's brief at 46.

"The freedom of parties to contract is an important public policy written into the state constitution and adopted by the people of Alabama. It is a significant liberty interest that is expressly protected in the constitution." Title Max of Birmingham, Inc. v. Edwards, 973 So. 2d 1050, 1054 n.1 (Ala. 2007). And it is long-standing Alabama law that contracts "'should be construed as written.'" Holcim (US), Inc. v. Ohio Cas. Ins. Co., 38 So. 3d 722, 728 (Ala. 2009)(quoting Shoney's LLC v. MAC East, LLC, 27 So. 3d 1216, 1223 (Ala. 2009)). The former husband and the former wife negotiated the terms and conditions of the settlement agreement, and the circuit court approved and adopted that agreement. The former wife and the former husband could have structured the settlement agreement to apportion the former husband's child-support obligation between each child. Or they could have included a provision that provided for a reduction in the former husband's child-support obligation if one of the children reached the age of majority. See, e.g.,

<u>Clingan v. Duffey</u>, 381 So. 2d 303, 304 (Fla. Dist. Ct. App. 1980)(noting that child-support obligation was "proportionately reduced" if the child was not supported by the mother). Or they could have fixed the amount of child support according to the child-support guidelines. See <u>Ex parte Moore</u>, 805 So. 2d 715 (Ala. 2001). But the former husband and the former wife chose not to do so. Instead, they chose to fix the former husband's child-support payment to a lump-sum amount and to extend the former husband's child-support obligation beyond the oldest child's reaching the age of majority, which they were free to do. See <u>Campbell</u>, supra.

The occurrence of an event anticipated by the parties' settlement agreement is not a material change in circumstances that is substantial and continuing. Furthermore, no other basis appears to support the circuit court's judgment on this issue. <u>CitiFinancial Corp. v. Peoples</u>, 973 So. 2d 332, 340 (Ala. 2007)("'[T]his Court will affirm a judgment for any reason supported by the record that satisfies the requirements of due process, <u>Taylor v. Stevenson</u>, 820 So. 2d 810, 814 (Ala. 2001), even where the ground upon which we affirm was not argued before the trial court or

this Court. <u>Ex parte CTB, Inc.</u>, 782 So. 2d 188, 191 (Ala. 2000).'" (quoting <u>Smith v. Mark Dodge, Inc.</u>, 934 So. 2d 375, 380 (Ala. 2006))).

We therefore hold that the circuit court erred in modifying the former husband's child-support obligation.

III.   <u>Whether the circuit court erred by terminating the former husband's alimony obligation</u>

The former wife argues that the circuit court erred by terminating the former husband's alimony obligation because, she says, the judgment is not supported by the evidence.

> "'[T]he modification of alimony is a matter that rests within the sound discretion of the trial court[,] and ... the trial court's judgment on that matter, following the presentation of ore tenus evidence, is presumed correct. ... "'Furthermore, this court is not permitted to reweigh the evidence on appeal or to substitute its judgment for that of the trial court.'" <u>Schiesz [v. Schiesz]</u>, 941 So. 2d [279,] 289 [(Ala. Civ. App. 2006)] (quoting <u>Sellers v. Sellers</u>, 893 So. 2d 456, 461 (Ala. Civ. App. 2004)). "Consequently, this court must determine if there was sufficient evidence to support the trial court's judgment. If so, we must affirm." <u>Hill [v. Hill]</u>, 562 So. 2d [255,] 257 [(Ala. Civ. App. 1990)]. However, if the trial court's judgment is unsupported by the evidence so as to be plainly and palpably wrong, we will reverse. ...

> > "'At trial, the party seeking to modify a trial court's judgment regarding alimony must make a showing that, <u>since the trial court's previous judgment, there has been a "material change in the circumstances of the parties."</u> <u>Posey [v. Posey]</u>, 634 So. 2d [571,] 572 [(Ala. Civ. App. 1994)] (citing <u>Garthright v. Garthright</u>, 456 So. 2d 825 (Ala. Civ. App. 1984)).'

> "<u>Newsome v. Newsome</u>, 984 So. 2d 463, 465-66 (Ala. Civ. App. 2007) (emphasis added); <u>see also</u> <u>Ex parte Ederer</u>, 900 So. 2d 424, 426 (Ala. 2004) (citation omitted) (stating that '"'an obligation to pay alimony may be modified only upon a showing of a material change in circumstances that has occurred since the trial court's previous judgment, and the burden is on the party seeking a modification to make this showing'"'). 'An obligation to pay alimony may be modified based upon a material change in circumstances in the financial needs of the payee spouse and/or in the financial ability of the payor spouse to respond to those needs.' <u>Ex parte Wilson</u>, 262 So. 3d 1202, 1204 (Ala. 2018). Moreover, 'the law is concerned with one's ability to earn, as opposed to actual earnings, in determining whether periodic alimony should be terminated, increased, or reduced.' <u>Cox v. Cox</u>, 485 So. 2d 767, 768 (Ala. Civ. App. 1986); <u>see also</u> <u>Higgs [v. Higgs]</u>, 270 So. 3d [280,] 285 [(Ala. Civ. App. 2018)], and <u>Santiago [v. Santiago]</u>, 122 So. 3d [1270,] 1278 [(Ala. Civ. App. 2013)]."

<u>Kitchens v. Kitchens</u>, 424 So. 3d 438, 446-47 (Ala. Civ. App. 2025).

The evidence of the financial circumstances of the parties that was before the circuit court when it terminated the alimony obligation was substantially the same evidence that existed at the time of the entry of

the January 7, 2021, judgment. The former wife's monthly gross income had increased from $790.50 to $966.80 but still consisted entirely of benefits from the SSA, and the former husband's monthly income had actually increased since 2021. Evidence concerning the former wife's expenses indicated that the former wife resided with her parents in 2021, that she resided in a house provided by her parents' revocable trust in 2024, and that her parents continued to subsidize her living expenses. The former husband provided evidence concerning his current expenses, but he did not provide evidence about his expenses in 2021 or evidence indicating that his expenses had increased since 2021 such that he could no longer afford to pay the alimony obligation.

Furthermore, the evidence of the former wife's passing of the Alabama State Bar Examination and the formation of her own law practice -- without more -- is not sufficient to establish a material change in the financial circumstances of the parties. The former husband testified that he did not know anything about the former wife's law practice, other than that she had become an attorney and was practicing law in Alabama. Accordingly, the only evidence about the former wife's law practice -- outside that testimony from the former husband -- came

from the former wife. The former wife testified that she is not able to work a complete eight-hour day, that she does not pay herself a salary from the law practice, and that she does not earn a profit from her law practice due to the expenses associated with that practice. The evidence indicated that the former wife had earned, on average, $687.38 per month in gross income from her law practice in the nine-month period of June 2023 to February 2024. It is also undisputed that the former wife remains disabled with respect to her receipt of benefits from the SSA.

Based on the foregoing, the former husband did not establish that there had been a material change in the circumstances of the parties since the entry of the January 7, 2021, judgment. Accordingly, we hold that the circuit court erred in terminating the former husband's alimony obligation.

## Conclusion

The circuit court erred by modifying the former husband's child-support obligation and by terminating the former husband's periodic-alimony obligation. Accordingly, we reverse the circuit court's judgment.

APPLICATION OVERRULED; OPINION OF FEBRUARY 6, 2026, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED.

Moore, P.J., and Edwards, Hanson, and Fridy, JJ., concur.